**Jesus Ruiz GUTIERREZ, Jr., Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 13–83–330–CR.**

Court of Appeals of Texas, Corpus Christi.

June 7, 1984.

Steve Cihal, Victoria, for appellant.

George Filley, III, Victoria, for appellee.

Before NYE, C.J., and YOUNG and UTTER, JJ.

## OPINION

NYE, Chief Justice.

This is an appeal from a murder conviction. Appellant was tried by a jury who assessed punishment at life in the Texas Department of Corrections.

■ Appellant asserts two grounds of error on appeal. First, he claims that there was insufficient evidence presented at trial to prove that he intentionally and knowingly caused the death of David Richard Gonzales by shooting him with a gun. To determine whether there was sufficient evidence to convict appellant, we review the testimony in a light most favorable to the jury verdict. *Clark v. State*, 543 S.W.2d 125 (Tex.Cr.App.1976); *Esquivel v. State*, 506 S.W.2d 613 (Tex.Cr.App.1974).

At trial, the jury heard testimony that appellant and David Gonzales, the decedent, had been roommates for a short period of time. On February 24, 1983, the appellant and Gonzales, the decedent, were at the home of Adolpho Gutierrez, a friend. Gutierrez testified that, on that evening, the appellant had a pistol in his possession. The evidence showed that the appellant had pawned the pistol with a neighbor, Demsey Thomas, for $10.00 and had retrieved it from him that day. At some point during the evening, Gonzales, the decedent, and appellant left Adolpho Gutierrez' home on foot. Gutierrez testified that appellant had the pistol in his pants' pocket when he left his home. Gutierrez testified that he noted no disagreements between appellant and the decedent that evening.

Rudolfo Naranjo testified that, sometime during the evening of February 24, 1983, his wife told him that appellant had come to their house looking for him. Naranjo then went to appellant's home and found appellant "real scared and ... shaken up." Appellant told him that he had shot David Gonzales. He told Naranjo that it had been an accident and he had been provoked. Appellant then told Naranjo that he couldn't take the "rap" and decided to dispose of the body. After some discussion between the two, Naranjo backed up his truck by the door of appellant's house, and appellant placed the body, wrapped in a bedspread, in the truck bed. Naranjo drove the truck to the end of Bois D'Arc Road. Appellant directed Naranjo where to stop. Appellant then dragged the body into the nearby woods with Naranjo following him. Thereafter, appellant cleaned the blood out of the back of Naranjo's truck, and the two of them drove back to Victoria. Naranjo testified that the two of them started to laugh when the song "Another

One Bites the Dust" began to play on the truck radio. Naranjo remembered that appellant told him at some point that he had been thinking of getting even with decedent because he thought Gonzales had taken $30.00 from him. He claimed it involved some sort of drug deal.

Billy Garber testified that, on February 25, 1983, he was on property which his family leases on Bois D'Arc Road in Victoria County. He testified that he noticed a buzzard come out of the brush. According to Garber, he checked further because he had cattle on that land, and the sight of a buzzard "usually signifies something's dead." He testified that he first noticed a bloody rag on a trail on the property and later, after he had requested assistance from law enforcement officers, the body of David Gonzales was found. Garber also described a bloody bedspread which was found at the scene.

Appellant testified that, on the evening of February 24, he and Gonzales went to his house after leaving Adolpho Gutierrez' home. According to appellant, he and Gonzales, the decedent, started drinking and talking. Appellant was sitting on the bed, and Gonzales was on the sofa. Appellant testified that Gonzales asked to see the gun. He testified that they were pretty drunk, and appellant fired a round at a clock that was in the room. He then pulled it back, but it jammed and went off and hit Gonzales. Appellant testified that he never intended to kill the decedent. He said that the decedent was his good friend and had never provoked him. He claimed that he removed the body because he was scared, drunk and couldn't think right.

▇ Appellant claims that the only evidence which contradicts his testimony that the shooting was an accident was the testimony of Naranjo. He argues that Naranjo voluntarily assisted appellant in attempting to conceal the body, making him an accomplice. First, we pause to note that there was no error on the part of the trial court in failing to instruct the jury that Naranjo was an accomplice witness because no charge was requested by appellant. Fur-

ther, appellant made no objections to the charge as submitted to the jury.

▇ A person is criminally responsible for an offense committed by another person if he acts with intent to promote or assist the commission of an offense by aiding, soliciting or encouraging another person to commit the offense. *Romo v. State*, 568 S.W.2d 298 (Tex.Cr.App.1977). One is not an accomplice witness if he cannot be prosecuted for the offense with which the accused is charged. *Easter v. State*, 536 S.W.2d 223 (Tex.Cr.App.1976). A witness is not an accomplice because he had knowledge of the crime but failed to disclose it or even concealed it. *Villarreal v. State*, 576 S.W.2d 51 (Tex.Cr.App.1978). Here, Naranjo could not have been convicted as an accomplice to the murder of David Gonzales. The record does not reflect that Naranjo solicited, encouraged, directed or aided, in any way, in the shooting of the decedent. See TEX.PENAL CODE ANN. section 7.02(a)(2) (Vernon 1974). His testimony need not be corroborated and was properly considered by the jury.

▇ Appellant also argues that there is no evidence that he intentionally and knowingly shot the decedent. He correctly states there is no longer a presumption of intent to kill when a deadly weapon per se is used by a defendant. *Harrell v. State*, 659 S.W.2d 825 (Tex.Cr.App.1983).

▇ TEX.PENAL CODE ANN. Section 19.02(a) (Vernon 1974) provides:

A person commits an offense if he: (1) intentionally or knowingly causes the death of an individual;

The indictment here charges appellant with intentionally and knowingly causing the death of David Richard Gonzales by shooting him with a gun. A person acts with intent with respect to the nature of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. TEX.PENAL CODE ANN. section 6.03(a) (Vernon 1974). Intent may be inferred from the acts, words and conduct of the accused. *Dues v. State*, 634 S.W.2d 304 (Tex.Cr.App.1982); *Beltran v. State*,

593 S.W.2d 688 (Tex.Cr.App.1980); *Romo v. State*, 593 S.W.2d 690 (Tex.Cr.App.1980). The trier of facts may infer intent to kill from any facts in evidence which, to his mind, proves the existence of such intent to kill. *Palafox v. State*, 484 S.W.2d 739 (Tex.Cr.App.1972). Here, appellant shot the decedent with a gun which he had retrieved only a few hours earlier from Demsey Thomas. After the shooting, the appellant did nothing that would indicate that the shooting was an accident. He did not call an ambulance, a doctor, the police or neighbors. Rather, appellant contacted his friend, Rudy Naranjo, to aid him in disposing of the body. Even though appellant told Naranjo that the death was an accident, he and Naranjo traveled a distance from the city and hid the body in a remote area. These were facts which the jury could consider in determining whether appellant had the intent to kill the decedent. *See: Cook v. State*, 388 S.W.2d 707 (Tex.Cr.App.1965); *Phillips v. State*, 152 Tex.Cr.R. 612, 216 S.W.2d 213 (1948).[1]

The jury was free to totally disregard the testimony of appellant and conclude from the testimony of Naranjo and appellant's subsequent actions in hiding the body in a remote area that appellant intended to kill Gonzales. Appellant's ground of error number one is overruled.

In ground of error number two, appellant alleges that the trial court erred in entering a finding in the judgment and sentence that appellant used and exhibited a deadly weapon, to-wit: a gun, in the commission of the offense of murder. He claims that the jury verdict does not include an affirmative finding that a deadly weapon was used by the appellant in the commission of the offense.

Here, the indictment alleges that the appellant:

"did then and there intentionally and knowingly cause the death of an individual, DAVID RICHARD GONZALES, by shooting him with a gun ..."

The jury found the appellant guilty of the offense of murder. The judgment and sentence of the trial court reads as follows:

"The jury found that the Defendant, Jesus Ruiz Gutierrez, Jr., used a deadly weapon, to-wit: a gun, in the commission of the offense of murder."

The issue here, as in *Chavez v. State*, 657 S.W.2d 146 (Tex.Cr.App.1983), is whether an allegation alleging "shooting with a gun" sufficiently alleges use of a deadly weapon. If so, the trial court properly included in the judgment a finding of the use of a deadly weapon based upon the jury verdict. In *Chavez*, the Court of Criminal Appeals held that the indictment which alleged causing death by "shooting him with a gun" charged the use of a deadly weapon. We find that the verdict here necessarily implicates a similar finding of the use of a deadly weapon since there was only one theory which was submitted to the jury, namely shooting with a gun. Appellant's second ground of error is also overruled.

The judgment of the trial court is affirmed.

---

1. In both of these cases, the victims were left by their assailants after being injured by them. The Court of Criminal Appeals in both instances found that the juries could properly consider the defendants' disregard for their victims as evidence of intent.