Ray Donald SESSION, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–83–170–CR.

Court of Appeals of Texas,
Beaumont.

Sept. 26, 1984.

Tom Brown, Livingston, for appellant.

James Keeshan, Dist. Atty., Conroe, for appellee.

OPINION

BROOKSHIRE, Justice.

The Appellant pleaded not guilty to the offense of Attempted Capital Murder of peace officer Cleburne Swilley. The jury found him guilty as charged in the indictment. The court assessed punishment at fifteen years and one day and affirmatively found that the Appellant used a deadly weapon, a firearm, in the commission of the offense.

This appeal is based on a single ground of error. Appellant contends that his motion for instructed verdict should have been granted because the evidence was legally insufficient to establish that he had the required intent to commit the offense of murder.

Gary Lee Pinson, a witness for the State, testified that he knew the Appellant. Pinson stated that he, the Appellant, and Hillary Brown rode in a pickup truck together on the evening of May 2, 1982. The Appellant was the driver, Pinson sat in the middle and Brown was on his right. The three decided to drive toward Houston from Livingston. About 11:00 or 12:00 p.m., they traveled north on the East Texas Highway toward Polk County. Pinson testified that they had not been drinking but they had been smoking marihuana. Appellant drove the truck to the front of a tire store located in Livingston at about 1:00 a.m. on May 3rd. Pinson further testified:

"A  When we got to the tire store, Ray got out and shot the window out. Shot inside the store about four or five times.

"Q  Do you know what kind of gun he was using, if he was using a gun?

"A  I think it was a—it was a hand gun, a .38 or something like a .38.

"Q  A pistol?

"A  Pistol.

     *　　*　　*　　*　　*　　*

"Q  Did you know if there were any other firearms in the truck at the time besides the pistol?

"A  Yeah, I had noticed. I had noticed.

"Q  Was there another firearm besides the pistol?

"A  Yeah, there was another firearm, a shotgun.

"Q  Do you know what kind of shotgun it was, what size or anything?

"A  It was a shotgun, I don't know what kind it was."

Bob Price, a reserve police officer with the Livingston Police Department, was on duty as the inn keeper of a Holiday Inn

across the street from the tire store. He heard the gunshots and ran outside to see what was happening. He saw the pickup truck and three people in front of the tire store. The driver left the store and drove past him. Price testified that the lighting was good enough to see all three men. Price described the driver as a large black man. Price was able to identify the Appellant in an in-court identification. He also gave testimony that the Appellant was definitely the driver of the vehicle as it left the tire store. Price notified the police of the shooting after the pickup truck sped away.

Deputy Sheriff Cleburne Swilley received a description of the vehicle and began a search for the truck. Swilley spotted Appellant's truck at a service station in Corrigan. He followed the truck for several blocks after it left the service station. Swilley switched on his revolving lights, aircraft landing lights and siren. The truck pulled over to the side of the road.

Gary Pinson testified that he was aware a police car had stopped them. Swilley, with the use of his public address system, told the occupants of the truck to "put your hands on your head." The two passengers complied but the driver did not. The command was repeated. Suddenly, the truck started off at a high speed.

Pinson testified:

"Q   Okay, now what did you do when you heard—what happened when he told you to get out of the car and put your hands up?

"A   Ray was driving at that time. He just took off. I—we was fixing to get ready to get out. I know I was and that boy next to me was, but he just took off."

The truck sped down the freeway and a chase ensued. At one point in the chase the speed of the truck was said to be in excess of 100 miles per hour. The truck slowed down as it approached the Neches River. Swilley came within 100 to 150 feet of the Appellant's truck. As the vehicles slowed down to 25 or 30 miles an hour, Swilley notified his dispatcher by radio that the truck was stopping. When Swilley

drew closer to the truck, he saw the Appellant raise a shotgun out of the window on the driver's side of the truck. When Swilley saw the shotgun, he immediately applied his brakes. The gun was pointed and fired in the direction of the patrol car driven by Swilley. The shot went slightly high and to the right of the patrol car.

Pinson further testified:

"Q   You said he was chasing you—were you going pretty fast?

"A   Yeah, we were going fast, real fast.

"Q   Okay, during any of this time, while he was chasing you, did anybody in the truck there, use any of the guns that you said were in the truck, either the shotgun or the pistol?

"A   *While we was driving down the Freeway, he shot at him. He shot at him with his pistol. Then he shot at him with the shotgun.*

"Q   By 'he', who are you talking about?

"A   Ray.

"Q   Was he still driving?

"A   Yeah, still driving, at that time.

"Q   How did he shoot at him?

"A   Like I am driving now, for instance, he turned back, you know, *he was just shooting at him like this here* (indicating).

"Q   Okay, now just out the window?

"A   Out the window.

"Q   Did either you or Mr. Brown pick up a gun and start shooting at him also?

"A   No, sir, I was down in the middle, I didn't know what to do. I was down in the middle, that's where I was. I was on the floor of the truck and he had got down." (Emphasis added.)

Swilley testified that after the first shot was fired the driver immediately increased the truck's speed and continued north on Highway 59. Two shots were fired within Polk County. Swilley said the Appellant was apparently driving with his left hand and shooting the gun with his right hand.

The fleeing suspects were stopped at a roadblock. Appellant was finally apprehended after a shootout with law enforcement officers in South Lufkin.

Testimony concerning the shootout and the roadblock in Lufkin was given by Patrolman Dennis Jones of the Lufkin Police Department. A Browning automatic 16-gauge shotgun and a .38 caliber pistol were recovered.

Simon David Hayes, a patrol officer with the City of Lufkin, secured evidence at the scene of the Lufkin roadblock. Hayes testified that Jones handed him a Browning 16-gauge shotgun and Swilley handed him a .38 caliber pistol.

The Appellant correctly concedes that under the prior Penal Code in a trial for assault with intent to murder, the predecessor of the present statute, that intent to kill could be inferred from the use of a per se deadly weapon in a deadly manner. *Thompson v. State*, 521 S.W.2d 621 (Tex. Crim.App.1974); *Burks v. State*, 145 Tex. Cr.R. 15, 165 S.W.2d 460 (Tex.Crim.App. 1942).

■ There is no longer such a presumption of specific intent when a per se deadly weapon is used by a defendant. *Harrell v. State*, 659 S.W.2d 825 (Tex.Crim.App.1983); *Gutierrez v. State*, 672 S.W.2d 633 (Tex. App.—Corpus Christi 1984, no writ).

But intent, even a specific intent, may be inferred from the conduct, acts, and words of the accused. *Dues v. State*, 634 S.W.2d 304 (Tex.Crim.App.1982); *Beltran v. State*, 593 S.W.2d 688 (Tex.Crim.App.1980).

Indeed, the trier of the facts may infer a specific intent to kill from any facts in evidence which in its mind proves the existence of such prerequisite intent. *See Palafox v. State*, 484 S.W.2d 739 (Tex.Crim.App. 1972).

■ There is evidence in the record on the prerequisite intent which was correctly before the jury. Evidence that during the chase the truck approached speeds of 100 miles an hour, then suddenly slowed to about 30 miles an hour, was proper for the jury to weigh. Evidence that when Swilley closed the distance between the two vehicles to within approximately 30 paces a shotgun was fired at him was proper for the jury's evaluation. Evidence of Swilley's quick reflex action thwarting any serious bodily injury or death was also proper to be considered by the trier of facts.

■ The basic thrust of *TEX. PENAL CODE ANN. sec. 15.01* (Vernon Supp. 1984), entitled Criminal Attempt, is that the offender does an act which amounts to *more than mere preparation* that tends to *but fails* to effect the commission of the offense.

■ Placing the shotgun outside the cab of the truck and firing the shotgun amounts to more than "mere preparation". The attempt failed. However, failure is not a defense nor does it negate the specific intent to commit the offense charged under this indictment.

Although not cited in the briefs, the State vigorously argued on oral submission date a triad of cases highly persuasive, if not controlling, under this record. *Carlsen v. State*, 654 S.W.2d 444 (Tex.Crim.App. 1983); *Freeman v. State*, 654 S.W.2d 450 (Tex.Crim.App.1983); *Denby v. State*, 654 S.W.2d 457 (Tex.Crim.App.1983).

■ We believe that the specific intent necessary in this case was based on direct and circumstantial evidence. Assiduously following *Carlsen, Freeman*, and *Denby, supra*, we agree that a verdict based on circumstantial evidence must exclude every other *reasonable hypothesis* except the guilt of the accused. Each and every fact need not necessarily point directly and independently to the guilt or specific intent of the accused, if the cumulative effect of all the surrounding, incriminating facts and circumstances when taken together are sufficient to support the verdict. Concededly, proof, evidence and circumstances which amount only to a strong suspicion or a mere probability are inadequate. In ascertaining the guilt of the accused, including the specific intent to commit capital murder, we review the entirety of the

record. We presume no fact or circumstance that was not shown to have been committed and intended by him. On appeal, a verdict of guilty will not be affirmed if the evidence and record does not sufficiently establish all the material elements of the offense charged.

The controlling and paramount inquiry on appeal in testing the sufficiency and adequacy of the evidence to support a criminal conviction must include the determination that the jury was properly instructed. The appellate inquiry must determine whether the evidence reasonably supports a finding of guilt beyond a reasonable doubt. *Carlsen, Freeman,* and *Denby, supra.* The inquiry does not require the reviewing court to determine whether the evidence at the trial established the elements of the offense as well as the guilt of the accused beyond a reasonable doubt. The relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *Johnson v. Louisiana,* 406 U.S. 356, 362, 92 S.Ct. 1620, 1624, 32 L.Ed.2d 152, 159 (1972). Under this appellate standard, the trier of fact must be given full play in its responsibility to fairly resolve conflicts in the testimony, conscientiously weigh the evidence and reach reasonable inferences from certain basic and evidentiary facts to arrive at the ultimate facts.

Appellant's one ground of error is disallowed. We affirm the verdict, the sentence, and the judgment below.

Affirmed.