**Jim Franklin LaGRONE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–88–075 CR.**

Court of Appeals of Texas,
Beaumont.

Sept. 14, 1988.

William G. Martin, Jr., Beaumont, for appellant.

Tom Maness, Criminal Dist. Atty. and R.W. Fisher, Asst. Criminal Dist. Atty., Beaumont, for appellee.

## OPINION

BROOKSHIRE, Justice.

A jury convicted Appellant of burglary of a building, and upon a plea of true to an enhancement count as a felony habitual offender, and an affirmative finding thereupon by the jury, LaGrone was assessed a punishment of forty-five (45) years in the Texas Department of Corrections. He now urges only one point of error, to wit: that the evidence presented by Appellee is insufficient to establish that Appellant voluntarily engaged in conduct or possessed a culpable criminal state by remaining concealed in a building with the intent to commit theft. We overrule Appellant's point of error and affirm the judgment of the trial court below, for the reasons stated in this opinion.

The events which occasioned this case occurred on the night of December 22 and early morning hours of December 23, 1987. At 10:00 p.m. on December 22, the Wal-Mart store in Nederland, Jefferson County, was closed to the general public. The assistant manager of the store, Mrs. Pamela Jenkins, checked all areas of the store for late customers and found none, according to her testimony. One area of the store checked was the patio garden center, enclosed by a seven foot chain link fence, with a tarp cover at the top, which was entered by a locked fence and two doors from the main indoor area of the store. The store alarm, stated the assistant manager, was turned on upon leaving the premises at 11:45 p.m. on the 22nd. At 12:00 a.m. the security alarm activated a signal to the main Wal-Mart security center in Bentonville, Arkansas, which then summoned both Mrs. Jenkins and a Nederland police officer to the store. They arrived at 12:30 a.m. on the 23rd. The store was then searched thoroughly, but Mrs. Jenkins stated that no sign of an intruder or false entry was found and she concluded that the cold, windy December weather caused the false alarm. She said she had looked in the garden area and found no one there.

At 4:03 a.m. on the 23rd, the security center in Bentonville again noted that the alarm system at the Nederland store was activated. At this time the central office called Mr. Tom McDuff, the store manager of the Nederland Wal-Mart, who testified

that the central office stated that the alarm sensors indicated the disturbance was located in the automotive or garden center area of the store. He stated that he met two store employees and a Nederland police officer at the store, and after entering and searching the store interior proceeded to the garden center. Once there he attempted to open the door leading to the garden center, but a jammed lock system in the door kept him from doing so. Mr. McDuff then assumed that a false alarm had again occurred, so he dismissed the police officer. However, Mr. McDuff testified that a closer look at the garden center door, while attempting to work on the lock system, revealed what appeared to be pry marks. Mr. McDuff, with the two store employees assisting, went to get some tools in the tool box kept in the garden center, to endeavor to repair the door. At that point he saw a ladder leaning against the fence, which was not kept there normally. At that point he stated that he believed a break-in of the store had been attempted, and he began a search of the garden area. Mr. McDuff stated that he lifted the tarp that covered garden center maintenance equipment, and there he found Appellant, lying in a crouched position under a portion of the tarp about two feet from the tool box. He testified that he called on Appellant twice to get up, after which Appellant rose and walked to Mr. McDuff. McDuff stated that Appellant appeared to be groggy when he came to him, and that Appellant claimed to have been asleep, seeking to sleep off an illness he contracted in the store the night before. Upon walking up to McDuff, Appellant was found in possession of a large Phillips screwdriver, and upon a request of Mr. McDuff to empty his pockets, Appellant surrendered a small screwdriver and a ball peen hammer, all three items of which were identified as belonging to Wal–Mart. At this point, about 4:30 a.m., the manager had one of his employees call the Nederland police, who came and arrested Appellant.

After Appellant was led away by the police, McDuff testified that a further inspection of the store revealed a small hole which had been knocked in a cinder block wall in the garden center area, as well as a speaker wire in the garden center which had been cut. Mr. McDuff testified that the coloring on the cinder block wall was "snickerdoodle", and that it matched remnants of paint found on the head of the ball peen hammer. These tools were admitted as State exhibits in evidence, with no objection.

Mr. McDuff testified that, though he did not own the store, he did have a superior right of possession of the store, and that he gave no consent to Appellant to remain in the store after closing time. He stated that it was a normal business practice at Wal–Mart for a thorough search to be made at closing time by store employees for any customers still in the store, that night maintenance people were in the store all night, and that a stranded customer could have received help to get out if he wanted to be found. Mrs. Jenkins testified that even though the evening fell during the middle of the Christmas shopping season, only about fifty customers were in the store at closing time on the 22nd of December.

Mr. Ronnie Denton, a Nederland police officer, testified that he had experience in fingerprint detection, and that he was given the three tools taken from Appellant for fingerprint investigation. He stated that he was not able to lift any fingerprints from the tools, because he had to use the palm and the metal portion of each which were too small.

After the State rested, Appellant immediately rested. After the jury's verdict of guilty of burglary of a building, and the reading of the habitual felony offender counts of the indictment, and the plea of true answered thereto, and the jury's assessment of punishment, Appellant gave written notice of appeal to this Court.

█ As heretofore stated, Appellant asserts that the evidence presented by the State was insufficient to establish that Appellant committed a voluntary act or had a culpable mental state by remaining concealed in a building with intent to commit theft. The elements of burglary of a build-

ing by remaining concealed are: 1) lack of effective consent by an owner; 2) remaining concealed in a habitation or building; 3) with intent to commit theft. *TEX.PENAL CODE ANN. sec. 30.02(a)(2)* (Vernon 1974); *Day v. State*, 532 S.W.2d 302 (Tex.Crim. App.1976). Appellant's ground of error takes two alternative forms: 1) that voluntariness was not proved by the State; or 2) the State failed to establish criminal intent to commit theft, even if he did remain concealed under that tarp without the owner's effective consent. *See TEX.PENAL CODE ANN. sections 6.01, 6.02, 6.03* (Vernon 1974).

As to the issue of voluntariness, Appellant urged several contentions. First, he claimed to be asleep in the store, as a result of feeling ill, and he cites Mr. McDuff's testimony, to wit: that Appellant was groggy, and McDuff shouted twice at him before he responded. Second, Appellant points out that no evidence of flight or attempted flight was offered by the State; McDuff testified that Appellant complied with instructions to come to a table and empty his pockets. The absence of fingerprint evidence on the alleged burglary tools, lack of evidence of fingerprints on any other items in the garden area (ladder, speaker wires, etc.) were also cited by Appellant to sustain his contentions.

■ We decide that such contentions are without merit. Voluntariness in this matter is determined by any of these facts, save for the issue of whether Appellant was asleep in the store in trying to stave off an illness. Voluntariness here impacts upon whether Appellant remained concealed in a building without the effective consent of the owner. Intent to commit theft, or the lack thereof, does not determine the issue of voluntariness. In *Simpkins v. State*, 590 S.W.2d 129 (Tex.Crim. App.1979), the Court wrote at 133:

"Thus, a person may act 'unintentionally' and still commit a criminal offense, provided he acts with knowledge, recklessness, or negligence.... Therefore, the distinction to be drawn in determining if the homicide is criminal is not whether or

not the act is intentional, but whether the act is voluntary or involuntary."

The element of a physical *volitional* act is the critical determination here, and here Appellant fails to even submit a truly meritorious challenge. As the State's brief points out, absence of evidence showing involuntariness establishes defendant's conduct as voluntary *as a matter of law*. *Wade v. State*, 630 S.W.2d 418, 419 (Tex. App.—Houston [14th Dist.] 1982, no writ).

■ Appellant's claim of lack of voluntariness fails for several reasons. First, Appellant never truly raised the issue of voluntariness. He presented no evidence of acting under duress, threat, or any other outside compulsion. On the contrary, it is clearly shown that Appellant voluntarily placed himself in the Wal-Mart store all night on December 22–23. He voluntarily placed himself in the garden center area of the store, after closing hours, without effective consent of the store manager, who held superior possessory authority. He voluntarily covered himself under the tarp in the said garden area. If Appellant had gone to sleep in the store, he did so voluntarily.

The claim that Appellant was asleep, because of an illness, is answered by the State with evidence which, though circumstantial, is sufficient to prove concealment in a building. *TEX.PENAL CODE ANN. sec. 30.02(a)(2)* (Vernon 1974). The standard for appellate review for sufficiency of evidence for a criminal conviction was enunciated in *Jackson v. Virginia*, 443 U.S. 307, 319 n. 121, 99 S.Ct. 2781, 2789 n. 12, 61 L.Ed.2d 560, 573 (1979), in which the U.S. Supreme Court ruled: "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See also Wilson v. State*, 654 S.W.2d at 471 (opinion on rehearing). Circumstantial evidence has been repeatedly shown to support a felony conviction, including one for burglary, if the evidence passes the following standard of proof, stated in the case of

*Wilson v. State,* 654 S.W.2d 465, 467 (Tex. Crim.App.1983):

> "[C]ircumstantial evidence will be sufficient to support a conviction if the facts proved support a reasonable inference that the defendant committed the crime and exclude to a moral certainty any inference consistent with his innocence. *Galvan v. State,* 598 S.W.2d 624 (Tex. Crim.App.1979). However, a conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the defendant's guilt."

See also *Moore v. State,* 640 S.W.2d 300 (Tex.Crim.App.1982); and *Hardage v. State,* 552 S.W.2d 837 (Tex.Crim.App.1977) (burglary conviction).

The facts are clear and the record strongly reflects no other reasonable hypothesis other than that of defendant's guilt. As the State points out in its brief, the garden area of the store was checked twice by the assistant manager, without Appellant or anyone else being found. At 4:30 a.m., the store manager responded to the alarm, searched the garden area, and there found Appellant underneath the tarp, lying in a "crouched" posture. The Court of Criminal Appeals has noted that a defendant being discovered in such a posture is acceptable, probative evidence of concealment, and is effective, cogent evidence contra to Appellant's claim of being asleep. *LaPoint v. State,* 750 S.W.2d 180, 184, 192 (Tex.Crim.App.1988). Pry marks were also found on the doors leading to the garden center from the main part of the store. A ladder was found leaning against the fence, and the manager testified such was atypical. When caught, Appellant had tools belonging to the store. Wires to a garden area loudspeaker had been cut, and a hole had been knocked out of a cinder block wall abutting the main store area. The paint found on the ball peen hammer seized from Appellant matched the "snickerdoodle" paint on the cinder block wall where the hole had been knocked out. The store manager testified he turned on the lights to the garden area when attempting repairs to the door lock, and was using tools from the tool box sitting two feet from the tarp,

making it difficult for anyone to remain asleep nearby. Finally, it was shown that maintenance people were constantly in the store, so that Appellant could have received help if he had been accidentally locked in the building.

It is clear that, beyond a reasonable doubt, a jury could have correctly found, under *Jackson v. Virginia* and *Wilson,* that Appellant volitionally committed the act of concealing himself in the Wal-Mart store, to the exclusion of any other *reasonable hypothesis.* It may be barely possible to conceive of Appellant deciding to take a rest in a fenced-in area that was exposed to the wind and cold of a December night, sleeping through the turned alarms, the double checks of assistant manager and manager, turning the lights on at the third check, the noises of door repair, and two shouts to wake up by the manager; but, it is not a reasonable hypothesis. The jury could and did properly find the burglary elements of voluntariness and concealment. *Hooker v. State,* 621 S.W.2d 597, 601 (Tex. Crim.App.1981). We reject Appellant's contention of error relative to the issues of voluntariness and concealment.

On the issue of intent to commit theft, it is clear that a rational trier of fact could have found that Appellant acted to conceal himself with such culpable intent. Appellant advances the same reasoning in asserting this portion of his ground of error that he gave on the voluntariness issue. It is proper to conclude, viewing the evidence in a light most favorable to the prosecution, that the jury could find beyond a reasonable doubt that Appellant intended to commit theft. *Jackson v. Virginia, supra.* Intent may be inferred from acts, words, or conduct of accused, which is amply shown. *Gutierrez v. State,* 672 S.W.2d 633 (Tex.App.—Corpus Christi 1984, no writ).

In light of the intent issue it is important to review the following facts. Appellant never sought the attention of night maintenance workers. The garden center door lock was jammed. The ladder was found in an uncustomary position, conducive for illegal entry or escape. A hole was cut in the cinder block wall, its paint matched

with the paint remains on the ball peen hammer taken from Appellant. Speaker wires were cut in the garden area. Tools were found on Appellant's person which belonged to Wal-Mart. Finally, the store manager found Appellant in a crouched position under the tarp. Certainly the jury could reasonably infer intent to commit theft beyond a reasonable doubt from those revealing facts.

Appellant's contention of a "groggy" condition could be reasonably dismissed as a "feigned arousal." The fact Appellant did not attempt flight but complied with McDuff's command to step forward could reasonably have been dismissed by the jury as an act of resignation over being caught, or as part of an attempted ruse. The failure of the fingeprint analyst to find prints on the tools could have been discounted by the jury by accepting the analyst's explanation, after being qualified as an expert, that the metal was too thin and the surfaces on the handles were not conducive to retrieving fingerprint samples.

In *Grinage v. State*, 634 S.W.2d 863 (Tex.App.—San Antonio 1982, writ ref'd), a burglary case with facts very similar to those before us, the San Antonio Court of Appeals held that evidence showing defendant entered a building without effective consent and remained concealed in that building constitutes *direct*, not circumstantial, evidence of burglary. Intent may then be inferred from such evidence. Suffice it to say that intent to commit theft by Appellant could have been very reasonably inferred and found by the trier of fact, the jury herein, to the exclusion of every other reasonable hypothesis, beyond the pale of a reasonable doubt.

Therefore, Appellant's contention of factual insufficiency to find intent to commit theft is hereby overruled.

We uphold the verdict of the jury and the judgment of the trial court below is hereby affirmed.

AFFIRMED.