Reginald D. Davis v. State 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-244-CR

REGINALD D. DAVIS APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

A jury found appellant, Reginald D. Davis, guilty of capital murder, and the trial judge sentenced him to life imprisonment, the State having waived the death penalty.  In five issues on appeal, Davis complains in his first two issues that the evidence is legally and factually insufficient to support the jury’s verdict, in his third and fourth issues that the trial court committed charge error by not charging the jury on the lesser included offenses of murder and manslaughter, and in his final issue that the trial court erred by admitting out-of-court statements of a witness as prior consistent statements.  We affirm. 

II.  Background Facts & Procedural History

On June 24, 2002, Luis Marquez was shot and killed.  Dr. Nizam Peerwani, the medical examiner for Tarrant County, performed the autopsy of Marquez and testified that Marquez died from perforation of the heart due to a gunshot wound to the chest.  Dr. Peerwani testified that he found a single gunshot wound on the body, that the bullet entered the body just above the left nipple, and that there was no exit wound.  Two T-shirts taken from Marquez were examined by Ronald Fazio, a senior firearms examiner for the City of Fort Worth Police Department crime laboratory.  Fazio testified that he found smoke, soot, and unburnt gunshot particles on the clothing.  He estimated, based upon his testing, that the approximate distance between the muzzle and the clothing at the time of discharge was no more than twelve inches. 

Fort Worth Police Officer Mathew Mapes testified that on June 24, 2002 he was dispatched to 4333 Jana in Fort Worth, Texas.  He stated that upon arrival he found a man in the front yard of the residence and that he attempted to wake him because he did not initially see any wounds, but that when paramedics arrived they discovered that he had been shot.  He stated that he interviewed three witnesses on the scene—Rita Alexander, Alvin Thompson, and Travis Thompson—that he was able to identify the victim as Marquez, and that he was able to identify Davis as having been present on the scene at the time of the shooting but as having left before police arrived.  Police later took a statement from Davis in which he described witnessing two people scuffling or fighting over something, hearing a shot or two, and seeing the person who had been fighting with Marquez leave in a “faded four door blue car.”

The record reflects that a few days after the murder, Police received information indicating that Gary Gentry had witnessed the crime but had not come forward because there was an existing warrant for his arrest.  Police subsequently arrested Gentry on the outstanding warrant, after which, on July 9, 2002, he gave police a statement regarding his observations on the night of the shooting.  In his statement to police, Gentry identified Davis as the person who shot Marquez.  Davis was later arrested by police and charged with capital murder. 

At trial, Gentry testified that he witnessed Davis attempt to rob and then shoot Marquez.  He testified that he was standing in the driveway of a relative’s house talking to his cousin and his cousin’s fiancé
(footnote: 2) when Davis approached on a bicycle and hid behind a Winnebago parked on the street.  He stated that Davis then jumped out as Marquez walked by, producing a small nickel plated gun, and that Davis demanded that Marquez “un ass” it, i.e., get everything out of his pockets.  He stated that Marquez resisted and the two men began to struggle.  He indicated that during the struggle Marquez knocked the gun out of Davis’s hand, but that Davis came up with the weapon and shot Marquez.  Gentry testified that he heard a second shot but that he did not see the second shot fired because he was running away from the shooting.
(footnote: 3) 

Gentry testified further that police had not promised him anything for his statement and that he had made “no deal” with the State on his probation revocation in exchange for his statements, but that after his probation was revoked the State had informed the trial judge, prior to sentencing, of his assistance in the arrest of a person charged with capital murder.  Gentry also testified that at the time of trial he had two pending charges, one for possession of a controlled substance and one for escape.  He testified that in exchange for his guilty plea, and his truthful testimony in this case, the State had agreed that the drug charge would be reduced to a misdemeanor and that the escape charge would be reduced to resisting arrest, also a misdemeanor, and that the sentences for both offenses would be 90 days in jail to run concurrently.

During cross-examination, Davis’s trial counsel attempted to impeach Gentry with inconsistencies in his testimony at trial.  In addition, Davis attacked Gentry’s credibility by implying that at the very least Gentry had a motive to fabricate when he gave his initial statements to police regarding the murder, and by eliciting testimony from Gentry and the interviewing officer, Detective McCaskill, regarding whether Gentry had sought a deal or guarantee on the pending revocation of his probation in exchange for his statements regarding the murder.
(footnote: 4)  Davis also attacked Gentry’s credibility by implying that Gentry had changed his story in order to obtain favorable treatment from the State on the charges pending against him at the time of trial. 

In response, the State recalled Gentry to the stand and offered into evidence Gentry’s oral and written statements given to Detective McCaskill on July 9, 2002, the day after Gentry’s initial arrest.  Davis objected to the admission of these two statements on the basis that they were hearsay, leading, repetitious, and bolstering.  The trial court overruled Davis’s objections and admitted the two statements.

Rita Alexander testified at trial that she was in her home on June 24, 2002 when she heard gunshots.  She testified that after hearing the first shot she went to the front door and observed one person “leaning behind a car” and another person on a bicycle.  She testified that after shutting her front door she heard three more shots causing her and the others present in the house to go out on the front porch.  She testified that she then observed the body of a man in her yard and Davis riding around in a circle on a bicycle with a white towel or T-shirt wrapped around his hand.  She testified that Davis told her to tell her husband
(footnote: 5) to call police because “it had been a drive-by,” that she saw no automobile, and that Davis left the scene before police arrived.  She also testified that Davis returned the next day and told her daughter to tell her and her husband that he was sorry about the man dying in her front yard, but that he would do his best to help police solve the crime. 

Alvin Thompson testified that he told his wife to shut the door after she went to the door to investigate what she thought was the sound of either a firecracker or a gunshot.  He stated that after she shut the door and they turned to go back to the hallway they heard perhaps two or three more shots.  He stated that they then went back to the door and saw Marquez “balled up in a knot right there by the tree by the barbeque pit.”  He testified that he saw Davis on a bike and that Davis hollered for him to call police because “this man had [been] robbed, attacked.” 

At the conclusion of the trial, Davis objected to the jury charge,  requesting that the charge include the lesser included offenses of murder and manslaughter.  The trial court denied both requested instructions.  Davis was convicted by the jury on both counts.  This appeal followed. 

III.  Sufficiency of the Evidence

In his first two issues, Davis contends that the evidence is both legally and factually insufficient to support his conviction because the State did not prove that the killing was intentional.  The State responds that there exists legally and factually sufficient evidence in the record from which a rational jury could have found the specific intent to kill.  We agree.      

A.  Standards of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to 
the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Ross v. State
, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004).
 

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  The trier of fact is the sole judge of the weight and credibility of the evidence.  
See
 Tex. Code Crim. Proc. Ann.
 art. 38.04 (Vernon 1979); 
Margraves v. State
, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).  We must resolve any inconsistencies in the evidence in favor of the verdict.  
Curry v. State
, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

In determining the legal sufficiency of the evidence to show appellant's intent, and faced with a record that supports conflicting inferences, we “must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution.”  
Matson v. State
, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
. at 484.  There are two ways evidence may be factually insufficient:  (1) the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
. at 484-85.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
. at 485.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
.   In performing a factual sufficiency review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 at 481; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for that of the fact finder’s.  
Zuniga, 
144 S.W.3d at 482.  A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at 484, 486-87.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).
 

B.  Analysis

Davis was charged with capital murder under section 19.03(a)(2) of the Texas Penal Code, i.e., the indictment charged that Davis did intentionally cause the death of an individual, Luis Marquez, by shooting him with a firearm in the course of committing or attempting to commit the offense of robbery of Luis Marquez.  
See 
Tex. Penal Code Ann.
 § 19.03(a)(2) (Vernon Supp. 2004-05).  Davis does not dispute that the evidence was sufficient to prove that he caused the death of Marquez by shooting him or that he shot Marquez in the course of robbing or attempting to rob him.  He does, however, argue that the evidence is insufficient to prove that the killing was intentional.  In that regard, Davis asserts that the evidence merely established that Marquez was shot during a struggle for the gun used in the robbery, not that he had the conscious objective or desire to cause Marquez’s death.

Whether the accused had the intent to kill is a question of fact for the jury to determine.  
Brown v. State
, 122 S.W.3d 794, 800 (Tex. Crim. App. 2003), 
cert. denied
, 541 U.S. 938 (2004); 
Hall v. State
, 418 S.W.2d 810, 812 (Tex. Crim. App. 1967).  The jury may infer the intent to kill from any evidence that it believes proves the existence of that intent.  
Brown
, 122 S.W.3d at 800.  Intent can be inferred from an accused's acts, words, or conduct.  
See Dues v. State
, 634 S.W.2d 304, 305 (Tex. Crim. App. 1982);  
Beltran v. State
, 593 S.W.2d 688, 689 (Tex. Crim. App. 1980);  
In re B.P.H.
, 83 S.W.3d 400, 407 (Tex. App.—Fort Worth 2002, no pet.).  For example, the specific intent to kill may be inferred from the use of a deadly weapon unless it would not be reasonable to infer that death or serious bodily injury could result from the use of the weapon.  
Jones v. State
, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996), 
cert. denied
, 522 U.S. 832 (1997); 
see also Flanagan v. State
, 675 S.W.2d 734, 744 (Tex. Crim. App. 1984) (op. on reh’g).  A deadly weapon is defined as a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.   
Tex. Penal Code Ann.
 § 1.07(a)(17) (Vernon Supp. 2004-05).  A “firearm” is therefore a deadly weapon, per se.  
See Boyett v. State
, 692 S.W.2d 512, 517 (Tex. Crim. App. 1985). 

Here, the record reflects that Davis employed a handgun in his attempt to rob Marquez and that a struggle for the weapon ensued resulting in the weapon being knocked from Davis’s hand, but that Davis regained control of the weapon and shot Marquez.  The record also reflects that Marquez was shot from very close range.  This is legally sufficient evidence from which a rational jury could have concluded that Davis intended to kill Marquez.  
See Jones,
 944 S.W.2d at 647.  

In his challenge to the factual sufficiency of the evidence, Davis argues that the physical evidence is consistent with a shooting occurring during the struggle over the weapon, i.e., an accidental shooting, not an intentional one. In support of that assertion, he points out that Davis died of a single gunshot wound to the chest and that the shot was fired from no more than twelve inches away.  He concedes that the existence of a second shot might tend to discount this theory, but argues that there could be many explanations for this second shot including accident or panic.  Further, he argues that witness Thompson’s description of Marquez’s slumped posture and position after the first shot, coupled with Gentry’s account of the shooting, would suggest that it was the first shot that hit Marquez. 

While there may be some evidence in the record supporting Davis’s argument that the killing was not intentional, there is also evidence in the record from which a rational jury could have found the killing to be an intentional one.  As previously noted, the specific intent to kill can be inferred by a jury from the use of a deadly weapon.  
See Jones
, 944 S.W.2d at 647.  Further, the existence of multiple gunshots may also be probative of an accused’s intent to kill.  
See Motilla v. State
, 78 S.W.3d 352, 359 (Tex. Crim. App. 2002) (indicating that decision to fire more than once is evidence of intent to kill).  Here, the record reflects that Davis shot Marquez with a handgun, that he did so at very close range, and that he fired at least two shots.  

Further, there is evidence in the record that Davis left the scene of the shooting before police arrived, that he returned the next day to apologize to the Alexanders for Marquez having died on their lawn, and that he lied to police about what happened.  This is all evidence from which a rational jury could have discounted the possibility that the killing was accidental and to conclude that Davis intentionally killed Marquez. 
 See Gutierrez v. State
, 672 S.W.2d 633, 636 (Tex. App.—Corpus Christi 1984) (indicating jury could infer defendant intended to kill victim where instead of reporting death as accident he and friend hid body in remote place); 
see also Lee v. State
, 866 S.W.2d 298, 302 (Tex. App.—Fort Worth 1993, pet ref’d) (indicating that consciousness of guilt constitutes one of the strongest types of evidence indicative of guilt) (citing
 Torres v. State
, 794 S.W.2d 596, 598 (Tex. App.—Austin 1990, no pet.)).   

What weight to give contradictory testimonial evidence is within the sole province of the jury, as it turns on the evaluation of credibility and demeanor. 
Cain
, 958 S.W.2d at 408-409. 
 As the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given their testimony, a jury may believe or disbelieve all or any part of a witness’s testimony. 
 McKinny v. State
, 76 S.W.3d 463, 468-69 (Tex. App.—Houston [1st Dist.] 2002, no pet.).  Here, the jury obviously believed that Davis intentionally killed Marquez.   We must afford deference to such a jury finding.  
See Cain
, 958 S.W.2d at 409.

Thus, after examining all the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found the essential elements of capital murder beyond a reasonable doubt.  Viewing all the evidence in a neutral light, favoring neither party, we conclude that the evidence supporting the verdict, taken alone, is not too weak to support the finding of guilt beyond a reasonable doubt and that the contrary evidence is not so strong that guilt cannot be proven beyond a reasonable doubt. 

Accordingly, we hold that the evidence is both legally and factually sufficient to support the jury’s verdict.  We overrule Davis’s first and second issues.  

IV.  Charge Error

In his third and fourth issues, Davis contends that the trial court erred by overruling his request for jury instructions on the lesser included offenses of murder and manslaughter.  Specifically, he argues that the State’s case established that Marquez was shot during a struggle for the gun used in the robbery and that from this evidence a rational jury could have concluded that the killing was either knowing or reckless, not intentional, as required to convict of capital murder.
(footnote: 6)  

A.  Standard of Review

To determine whether a jury must be charged on a lesser included offense, we apply a two-step analysis.  
Moore v. State
, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998).  The first step is to decide whether the offense is a “lesser included offense” as defined in article 37.09 of the code of criminal procedure.  
Tex. Code Crim. Proc. Ann.
 art. 37.09 (Vernon 1981); 
Moore
, 969 S.W.2d at 8.  A lesser included offense is defined both in terms of the offense charged and the facts of the case:  “An offense is a lesser included offense if . . . it is established by proof of the same or less than all the facts required to establish the commission of the offense charged.”  
Tex. Code Crim. Proc. Ann
. art. 37.09(1). Therefore, our analysis of whether an offense is a lesser included offense of the charged offense must be made on a case-by-case basis.  
Bartholomew v. State
, 871 S.W.2d 210, 212 (Tex. Crim. App. 1994); 
Day v. State
, 532 S.W.2d 302, 315-16 (Tex. Crim. App. 1976) (op. on reh'g).  It does not matter if the charged offense can be established on a theory that does not contain the lesser offense; the issue is whether the State, when presenting its case to prove the offense charged, also includes proof of the lesser included offense as defined in article 37.09.  
See Bartholomew
, 871 S.W.2d at 212; 
Broussard v. State
, 642 S.W.2d 171, 173 (Tex. Crim. App. 1982).  Second, some evidence must exist in the record that would permit a jury to rationally find that if the defendant is guilty, he is guilty only of the lesser offense.  
Rousseau v. State
, 855 S.W.2d 666, 672-73 (Tex. Crim. App. 1992);
 Royster v. State
, 622 S.W.2d 442, 446 (Tex. Crim. App. 1981). 

The evidence must be evaluated in the context of the entire record. 
Moore
, 969 S.W.2d at 8.  There must be some evidence from which a rational jury could acquit the defendant of the greater offense while convicting him of the lesser included offense.  
Id.
  The court may not consider whether the evidence is credible, controverted, or in conflict with other evidence.  
Id.
  If there is evidence from any source that negates or refutes the element establishing the greater offense, or if the evidence is so weak that it is subject to more than one reasonable inference regarding the aggravating element, the jury should be charged on the lesser included offense.  
Id.; see also Schweinle v. State
, 915 S.W.2d 17, 19 (Tex. Crim. App. 1996); 
Saunders v. State
, 840 S.W.2d 390, 391-92 (Tex. Crim. App. 1992).

B.  Analysis

The trial court instructed the jury that it could convict Davis of capital murder if the jury found that he had committed murder in the course of committing or attempting to commit robbery.  The State does not challenge Davis’s contention that murder or manslaughter are lesser included offenses of capital murder in the course of committing or attempting to commit robbery.  The issue here is whether there is evidence to raise the lesser included offenses.

1.  Murder

At the charge conference Davis requested a charge on the lesser included offense of murder which would allow the jury to find Davis guilty of the lesser offense of murder if they determined that the murder was committed by Davis “knowingly.”  In his appellate brief, Davis contends that he was entitled to the requested instruction because there is evidence in the record suggesting that the shooting occurred during a struggle for the gun, i.e., that the shooting was accidental.  Davis does not, however, tell us how this evidence shows that the murder was 
only
 a “knowing” murder, not an intentional one.
(footnote: 7)  Davis’s appellate counsel argued an additional theory during oral argument.  Counsel argued that Davis was entitled to the requested instruction because, if you carry a gun to a robbery, it is a reasonable conclusion that you know it will lead to a killing. 

The Texas Penal Code provides that “[a] person acts knowingly, or with knowledge, with respect to the nature of his conduct . . . when he is aware [that] his conduct is reasonably certain to cause the result.”  
Tex. Penal Code Ann.
 § 6.03(b).  While evidence that the shooting occurred during the course of a struggle for the weapon may be evidence that the killing was accidental, it is not evidence from which a rational jury could have determined that Davis was guilty 
only
 of 
a 
“knowing” murder, not an intentional one.
  Further, we reject Davis’s argument that he was entitled to the requested instruction simply because he used a gun in the robbery.  The trial court did not err in refusing to include in the jury charge the instruction on the lesser included offense of murder.    

2.  Manslaughter

We now consider Davis’s contention that he was entitled to a lesser included charge on manslaughter because the evidence that Marquez was shot during a struggle for the weapon is evidence of a reckless killing, not an intentional one.  The State, 
citing
 
Gadsden v. State
, 915 S.W.2d 620, 623 (Tex. App.—El Paso 1996, no pet.), responds that even if the evidence can be interpreted to show that Davis acted recklessly, he was not entitled to the lesser included charge of manslaughter because a homicide committed in the course of robbery is not manslaughter; it constitutes, at the very least, the offense of felony murder.  
See id
.; 
see also 
Tex. Penal Code Ann.
 § 19.02(b)(3) (Vernon 2003) (defining felony murder).

Here, Davis does not argue that the killing did not occur in the course of robbery.  As such, the jury could not have found him guilty, if at all, only of manslaughter.  
See Gadsden
, 915 S.W.2d at 623.  The trial court did not err in refusing to include in the jury charge an instruction on the lesser included offense of manslaughter.  We overrule Davis’s third and fourth issues.    

V.  Prior Consistent Statements 

In his fifth issue, Davis contends that the trial court erred by admitting into evidence two out-of-court statements given by eyewitness Gentry to police; one a typed statement, and the other a recorded statement.  The State responds that the statements were admissible as prior consistent statements. 

A.  Standard of Review

We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard.  
Burden v. State
, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001); 
Green v. State
, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996), 
cert. denied
, 520 U.S. 1200 (1997); 
Montgomery v. State
, 810 S.W.2d 372, 379-80 (Tex. Crim. App. 1990).  The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action; rather, it is a question of whether the court acted without reference to any guiding rules or principles, and the mere fact that a trial court may decide a matter within its discretionary authority differently than an appellate court does not demonstrate such an abuse.  
Montgomery
, 810 S.W.2d at 391.  We will not reverse a trial courts ruling on the admission of evidence as long as the ruling is within the zone of reasonable disagreement.  
Id
.

B.  Analysis 

Texas Rule of Evidence 
801(e)(1)(B) provides that a prior consistent statement by a witness “offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive” is not hearsay.  
See
 
Tex. R. Evid.
 801(e)(1)(B).
 
 However, to be admissible, the statement must have been made before the alleged motive to fabricate.  
Haughton v. State
,
 
 805 S.W.2d 405, 408 (Tex. Crim. App. 1990). 

On the other hand, it is not necessary that the prior statement be made before any possible motive to fabricate.   As stated by the court of criminal appeals in 
Dowthitt
 
v. State
,  

in order to satisfy Rule 801(e)(1)(B) it is not necessary that a prior consistent statement have been made before 
all
 motives to fabricate arose.  
The rule requires merely that the witness’ prior consistent statement be offered “to rebut 
an
 express or implied charge against him of recent fabrication or improper influence or motive.”

See 
931 S.W.2d 244, 264 (Tex. Crim. App. 1996)
 (emphasis in original).  

Here, Davis contends that the motive to fabricate arose prior to the murder, when the State moved to revoke Davis’s felony probation, and again, prior to trial, when the State filed new criminal charges against him.  The State responds that although the statements at issue were taken after Gentry was arrested on an outstanding probation violation warrant, he made the statements without any discussion with police of possible benefit to him and before entering into any negotiations with the prosecution.  Accordingly, the State argues that the statements were admissible as prior consistent statements offered to rebut an express or implied charge of recent fabrication or improper influence or motive.

The record reflects that Davis impliedly, if not expressly, attacked Gentry’s testimony by not only implying that he had a motive to fabricate when he gave his initial statements to police, but also by implying during cross-examination that Gentry had changed his story in order to obtain favorable treatment from the State, in the form of a plea bargain, on the new charges pending against him at the time of trial.  Under these circumstances, we believe that Gentry’s  statements were admissible as prior consistent statements.   

First, we decline to adopt Davis’s position that Gentry’s motive to fabricate arose even before the murder, when the State moved to revoke his probation, because were we to do so no statement of a person charged with a crime could ever be used to rehabilitate that witness after a charge of recent fabrication or improper influence.  Nor do we believe that position is supported by the case law.  
See
 
Bilbrey v. State
, 594 S.W.2d 754, 759 (Tex. Crim. App. 1980) (holding rehabilitation of witness by showing he had told same version of the facts before any offer of leniency was made by the State not improper to rebut defendant’s attempt to impeach accomplice’s testimony by raising inference that testimony was recent fabrication based upon State’s offer of leniency); 
Alvarado v. State
, 816 S.W.2d 792, 797 (Tex. App.—Corpus Christi 1991) (holding statement given after arrest but before defendant had contact with prosecutor or anyone from district attorney’s office admissible as prior consistent statement), 
aff’d as reformed
, 840 S.W.2d 442 (Tex. Crim. App. 1992); 
Mathes v. State
, 765 S.W.2d 853, 858-60 (Tex. App.—Beaumont 1989, pet ref’d) (holding accomplice’s prior consistent statement given to his own attorney prior to being interviewed by the State and before plea bargain negotiations was properly admitted to rebut the defendant’s claim that the accomplice’s testimony was recently fabricated).  

Second, even if Gentry had some motive to fabricate at the time of his statements, we believe that Gentry’s statements were still admissible to rebut the implied or express charge that Gentry had changed his story to obtain favor with the State on the charges occurring after the statements and pending against him at trial, because the Texas Court of Criminal Appeals has stated that it is 
not necessary that the statements be made before 
all
 possible reasons to fabricate, but merely that the witness’s prior consistent statement be offered to rebut 
an
 express or implied charge against him of recent fabrication or improper influence or motive.  
See Dowthitt, 
 
931 S.W.2d at 264.  Clearly that is the situation here.  The trial court did not err in admitting Gentry’s prior consistent statements into evidence.  We overrule Davis’s fifth issue.

VI.  Conclusion

Having overruled Davis’s five issues on appeal, we affirm the trial court’s judgment. 

BOB MCCOY

JUSTICE

PANEL B: LIVINGSTON, HOLMAN, and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  August 31, 2005

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
Gentry identified his cousin as Paul Dunbar and his cousin’s fiancé as Misty Martindale.  Neither Dunbar or Martindale testified at trial. 

3:
The record reflects that police recovered two spent shell casings at the scene of the murder. 

4:
The record reflects that at the time of his initial interview with police regarding the murder, Gentry told Detective McCaskill that he wanted a deal or a guarantee as to what was going to happen to him on his probation revocation before talking about the murder.  However, the record reflects that Detective McCaskill told Gentry that he did not have the authority to make deals, that all he could do would be to make Gentry’s wishes known to the district attorney’s office.  Detective McCaskill then testified that he did not tell Gentry that he had a deal on his probation revocation prior to Gentry giving him a statement regarding the murder. 

5:
Mrs. Alexander testified that Alvin Thompson was her husband. 

6:
Davis does not argue the possibility that he was entitled to an instruction on felony murder.  
See Fuentes v. State
, 991 S.W.2d 267, 272 (Tex. Crim. App. 1999) (concluding felony murder to be a lesser included offense of capital murder).  In fact, during the charge conference, he argued that felony murder was not a lesser included offense under his indictment.  

7:
The culpable mental state of intentional conduct is higher than that of knowing conduct.  
Tex. Penal Code Ann.
 § 6.02(d) (Vernon 2003).  “Proof of a higher degree of culpability than that charged constitutes proof of the culpability charged.”  
Id
. § 6.02(e).  Thus, a “knowing” culpable mental state is subsumed within an “intentional” culpable mental state. 
See id
.