**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-23-00132-CR**
_____

**CLIFTON TODD HANKS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 221st District Court**
**Montgomery County, Texas**
**Trial Cause No. 21-05-07217-CR**

## MEMORANDUM OPINION

Appellant Clifton Todd Hanks ("Appellant" or "Hanks") appeals his conviction for online solicitation of a minor. *See* Tex. Penal Code Ann. § 33.021(c). A grand jury indicted Hanks and alleged that Hanks committed the offense on or about May 19, 2021, and that Hanks was previously convicted of two felony offenses. Hanks pleaded not guilty. A jury found Hanks guilty as charged in the indictment. Hanks pleaded "not true" to the enhancement allegations, but the jury found the allegations "true" and assessed punishment at seventy-five years of

confinement. Hanks timely appealed, and he challenges his conviction in fourteen issues. We affirm the trial court's judgment of conviction.

Evidence at the Guilt or Innocence Phase of Trial

<u>Testimony of Detective Darrick Dunn</u>

Detective Darrick Dunn, with the Conroe Police Department, testified that he was currently assigned to the Internet Crimes Against Children ("ICAC") task force. According to Dunn, the ICAC works "proactively and reactively[]" to fight internet crimes against children and child exploitation. Dunn testified that in a reactive case, the task force would respond to a complaint from a citizen or a "cyber tip" that a child has been exploited, and in a proactive case, the task force members work online and undercover "trying to get to the suspect before they get to the child." Dunn further testified that in a proactive case, he might pretend to be a minor online on KIK—a commercial electronic messaging app for communicating one-on-one, in groups, or anonymously, including sending text messages, photos, and videos— chatting with people who believe they are chatting with a minor and seeking out minors for sexual gratification. Dunn explained that when he is undercover and pretending to be a minor online, he states an age for his undercover persona in the beginning when he chats with someone.

Dunn testified that "there is nothing to regulate who can get on KIK[,]" but that the terms of service require a user to be thirteen years old. According to Dunn,

2

it is common for children under the age of seventeen to use KIK, for child pornography to be shared on KIK, and he has investigated cases and made arrests where children were solicited on KIK. Dunn explained that when he works undercover on KIK, he posts an age-regressed photograph of himself or a photograph of someone in the department who looks young. He generally logs into a group on KIK, messages start coming in soon afterwards, and he generally talks to multiple people at a time. According to Dunn, he is never the first person in a KIK chat to bring up sex because that would be against ICAC standards. Dunn testified that when he tells someone on KIK that he is fourteen years old, about half of the people say he is too young, but "a lot of people continue chatting." Dunn explained that when a chat turns sexual in nature, he tries to match the other person's tone to "continue chatting with this person and see where it goes." When Dunn is doing an investigation in KIK, he does not take a screenshot[1] of every message he sends or receives because saving screenshots all day long would prevent him from chatting and because his phone does not have enough storage capacity to store that many screenshots. According to Dunn, KIK does not crash often, but he has seen it happen, and after a crash, "all those messages are gone [and] whatever you don't screen shot when it crashes is gone[]" with no way to recover the lost messages. Dunn testified

---

[1] Applicable to this case, "a screenshot is a picture taken by a cell phone of what was on the cell phone's screen." *Villareal v. State*, 590 S.W.3d 75, 80 n.2 (Tex. App.—Waco 2019, pet. ref'd).

that, after KIK crashes, he just picks up a communication where he left off and takes screenshots.

Dunn conducted an investigation in Montgomery County in the spring of 2021 that involved Clifton Hanks, and he identified the defendant as Hanks. Dunn testified that he was the lead investigator posing as "Ally Martinez," and Hanks—who was sixty-three years old at the time—was using KIK. Dunn recalled that he started chatting with Hanks in early March of 2021, and in chats during April of 2021, Hanks asked his age and where he lived, Dunn told Hanks that he lived in Conroe, and Hanks said he lived in Houston near "Irvington and Collingsworth[.]" Dunn testified that "eventually the chats got sexual in nature[]" with Hanks saying he was interested in meeting. According to Dunn, Hanks never questioned whether Dunn (posing as Ally) was older than fourteen, and Hanks never said Ally was too young to be on KIK. Dunn also testified that he never told Hanks that he was engaging in role play or fantasy and such a statement would be against ICAC standards.

Dunn identified State's Exhibit 1 as a photograph he sent Hanks of "Ally," the child Dunn was portraying. Dunn testified that he had screenshots of conversations with Hanks that occurred in April, but Dunn did not have screenshots of his conversations with Hanks from March and part of April because KIK crashed, and he "just hadn't got around to screen shotting all the conversations[,]" so that there was some content he did not have because KIK crashed.

4

Dunn identified State's Exhibit 2 as a copy of a screenshot of a text message exchange between Hanks and Dunn (posing as Ally) he took in April of 2021 using his undercover iPhone cell phone. The prosecutor and Dunn read the text message exchange aloud to the jury, which was as follows:

[Hanks]:   F**k you hard
           Where we going to
           I want to f**k you today, want my c**k in you

[Ally]:    You have protection…not tryna get pregnant at 14…my mom would kill me

[Hanks]:   Thought your on pill
           But yeah I always have that and lube

[Ally]:    I'm not on the pill

Dunn testified that this was the second time he mentioned Ally's age. Dunn again agreed that he did not have screenshots of other messages because the application crashed. Dunn testified that he did not decide to end his investigation when KIK crashed, and that Hanks contacted him again in April after the site had crashed.

Dunn identified State's Exhibit 3 as a screenshot of messages he exchanged with Hanks between April 29 and May 19 of 2021, and Dunn agreed that after April 29, he took screenshots of all the messages between himself and Hanks. Dunn further agreed that the text messages in Exhibit 3 are consistent with the messages between himself and Hanks that occurred before April 20. After he messaged Hanks again that Ally was fourteen years old, Hanks sent a picture of himself, and when Ally

5

asked what he was doing that day, Hanks replied, "Nothing planned but the thought putting a rise in my pants[.]" As the messaging continued, Dunn (pretending to be Ally) asked how far Hanks was from Conroe, and Hanks responded that he was just north of downtown Houston, "I'd like to get you here, we wouldn't be interrupted" and "I live two blocks from Moody Park. . . . Irvington and Collingsworth. 3403 Elser Street." Dunn further testified that, as the messaging continued, Hanks stated, "I am going to get myself together. Talk to you in a short[]" and "You need to play spending the night with a friend. Rubbing my c**k, watching porn, spun." Dunn explained that "spun" means high on drugs or a drug binge. Dunn further testified that Hanks sent a picture of himself, and the photo also showed that Hanks had a pornographic image on a television. After Hanks messaged Ally that he would take an Uber to see Ally, Hanks also sent a video of a man and woman having sex and messaged, "We are going straight to getting a buzz and naked. Oral. I like giving as much as receiving." In other messages, Hanks told Ally that he needed a shower and suggested they could shower together. When Ally asked him, "What you going to tell people when they see us together?" he replied, "My wife[,]" and Ally then messaged, "I am 14 and say I am your granddaughter or something, not your wife." Additional messages from Hanks that day indicated he was in an Uber car "about 5 minutes away" from Ally, his Uber driver was driving a Black Chrysler, and later he

6

texted Ally he had arrived and that he was standing "right behind" the Chrysler waiting for her.

Dunn identified State's Exhibit 4 as a map from Hanks's address to Conroe. After Hanks sent the last message, officers pulled in and arrested Hanks. Dunn identified State's Exhibit 5 as drugs confiscated from Hanks when he was arrested, and based on his experience, Dunn thought one of the substances was marijuana. Dunn also testified that the arresting officers obtained two cell phones and an iPad from Hanks. Hanks signed a "Consent to Search Digital Device" form, and a copy was admitted into evidence. Dunn agreed that Hanks was arrested in Montgomery County, and Dunn was in Montgomery County when he was receiving messages from Hanks.

On cross-examination, Dunn testified that his first contact with Hanks was in early March of 2021 and Hanks reached out to Dunn. Dunn further testified that he did not know the exact date of the initial contact, and he does not typically make the first contact, although it was possible that he reached out to Hanks first. According to Dunn, he told Hanks his age (posing as Ally) because ordinarily "[a]s soon as we start talking, I mention my age, first contact." He agreed he did not take screenshots of his initial messages with Hanks. When asked why he did not take screenshots, Dunn explained:

> So when I am talking to a suspect, I am talking to multiple suspects at
> a time. Possibly ten. So at that given time I just hadn't got around to it

7

because I am going back and forth with different persons that I am chatting with. And it just so happens that [] the application crashed before I was able to screen shot anything. So I just don't have it.
. . .
You have to understand I am talking to multiple people, ten people at a time. I am talking to multiple people every day. So to screen shot everything? You know, my phone wouldn't have enough storage to just screen shot everything. You know, I couldn't do it. And that's all I would be doing every day is screen shotting.
. . .
So after it crashed, you know, I started trying to capture what I had. And that's just what I have. So what you see is what you have.

Dunn did not know the date that the KIK app crashed, and he was aware that KIK does not store old messages, so he could not reach out to KIK to get the messages. According to Dunn, he is not an expert on computers or apps, but he regularly uses social media apps to communicate with people. Dunn did not know the screenshots in Exhibit 3 show the provider (Verizon), bars for the strength of service, the time, and a battery icon (showing the phone's charge) whereas the screenshot in Exhibit 2 does not show these items. He also admitted he did not save screenshots before KIK crashed, that he preserved the evidence that he had, and that there were more messages between himself and Hanks that were not saved than messages that were saved. On re-cross, Dunn testified that he was only able to preserve one screenshot from April. Dunn agreed that State's Exhibit 3 (screenshots of messages) included a reference to a time when Hanks said he was going to come meet Ally, but "for whatever reason, [Hanks] never showed up."

On redirect, Dunn agreed that when you take a screenshot, that image includes metadata, which includes the time and date of the image and what kind of image it is—for example, if it is a screenshot. Dunn testified that State's Exhibits 12 and 13 were copies of the metadata for State's Exhibit 2, and Exhibit 12 reflects that the image in Exhibit 2 was a screenshot taken on April 21, 2021. Dunn agreed that State's Exhibit 14 also includes metadata, and the exhibit gives a "date modified" of "5/19/2021" for several images and "4/21/2021" for one image that was the screenshot in Exhibit 2. Dunn also agreed that the metadata had been provided to the defense before trial.

Testimony of Investigator Nikki Neeley

Investigator Nikki Neeley testified that she is an investigator with the District Attorney's office assigned to the "digital forensics lab." Neeley explained that she became a licensed peace officer in 2005 and has worked for the Navasota Police Department and Grimes County Sheriff's Office where she was promoted to patrol officer and a detective in the criminal investigations division. Neeley testified that as a detective, she primarily worked on cases of sexual assaults of children and is a member of the Houston Metro Internet Crimes Against Children task force, working as a field investigator. She further testified that she was hired by the Montgomery County Sheriff's Office in 2011 and worked with Children's Safe Harbor on cases

of sexual assaults of children aged ten and younger. According to Neeley, she started doing forensics and primarily phone forensics in 2014.

Neeley testified she was "chat certified [and] [t]here is a cyber crimes course we take." She explained that she also received a five-week training course in computers and cell phone forensics through the National Computer Forensic Institute. She received Cell Hawk training on how towers track mobile devices. According to Neeley, in her work, she has examined "[h]undreds[]" of cell phones. She has used the Cellebrite software to extract data from cell phones, but Cellebrite does not extract every single piece of data from a cell phone. She explained that the KIK app works like text messaging, and it is common to see the use of KIK in child exploitation cases. She agreed that in 2021, KIK crashed from time to time, and when it crashed, messages would not be retrievable, the company that runs KIK does not store messages, and there are no tools or programs that she knows about that would allow someone to get messages that were lost.

Neeley agreed she was asked to examine some devices related to this case. She obtained images from Hanks's iPad, but she did not obtain any KIK messages from the iPad. Neely obtained some data from Hanks's purple Samsung phone, including images in a file path that indicated the data was from KIK, but she did not obtain text messages. Neeley testified a white Samsung phone was also obtained from Hanks, and on that phone, she was able to see there were some KIK messages,

10

but Cellebrite was not able to pull some of the messages from the phone. Neeley agreed that she found some KIK messages from Hanks to Ally on the white Samsung phone, including the photo that Dunn used to pose as Ally, a fourteen-year-old child. According to Neeley, the metadata gave a date of March 11, 2021 for that image. Neeley identified State's Exhibit 10 as a screenshot of KIK message threads on Hanks's phone, which included a thread with "Ally Martinez," and the image was on Hanks's phone. Neeley testified that Ally's name in the screenshot means "there was communication on KIK with the Defendant -- with the phone and Detective Dunn." Neeley also testified that State's Exhibit 11 had the same content as State's Exhibit 3; that State's Exhibit 11, which was extracted from Hanks's phone, had more messages than Detective Dunn's screenshots in State's Exhibit 3; and that one page of State's Exhibit 11 was a map of the Hardy Toll Road. Neeley concluded that Hanks was communicating with Dunn's undercover persona because the messages on Hanks's phone matched the screenshots that Detective Dunn had taken from Dunn's undercover phone.

On cross-examination, Neeley testified that Defense Exhibit 1, "Evidence/Property - Receipt/Release[,]" was a form she received from Detective Dunn in this case, that the form gave the defendant's name as "Eric Davis, Junior[,]" and that "Davis" was another defendant and not an alias for Hanks. She agreed that the "Eric Davis" name was a mistake.

11

Neeley identified the first image in State's Exhibit 11 as Hanks's "home screen on his phone[.]" Neeley did not know why the home-screen image was dated March 24, 2021, but she indicated that the setting may have been "off" on the phone, and Neeley testified it was "not uncommon for this to happen if phones have been off for a period of time[,]" and she did not perform the extraction until October 12, 2021. Neeley agreed that State's Exhibits 3 and 11 did not include all the same "chats and screen shots[.]" Neeley further testified that she had seen cases where there were fifteen to twenty pages of chat messages that were missing from a Cellebrite report.

On redirect, Neeley testified that some messages included in Exhibit 3 may not appear in Exhibit 11 because "they could have been deleted on the Defendant's end[.]" Neeley and the prosecutor read through some of the messages aloud, which included: a message from Hanks stating the size of his penis; messages from Hanks saying he had been with a thirteen-year-old girl when he was twenty-seven; and a message from Hanks saying, "I need to pick you up." Neeley testified that a message from Hanks saying, "I would like to get you here. We wouldn't be interrupted[,]" was a "solicitation of a meeting." Neeley testified that, based on her experience and training, she believed the messages constitute an online solicitation for sex with a minor. Another set of messages stated:

[Hanks]: Rainy weather is for staying naked all day.

[Ally]: Maybe. Hey, you at home?

[Hanks]: Yes. Come over.

[Ally]: How? I don't drive.

[Hanks]: How long can you stay? Have a buddy coming over. Get a ride with him and me.

[Ally]: WIM? What do you mean? Where he at?

[Hanks]: He owes me money. I have know him since 5 years old.

[Ally]: Okay. So you want me to ride with some stranger and come to you?

[Hanks]: No. I will be there too. Or I can send Uber.

Neeley testified that she understood from these messages that "[c]ome over[]" meant for Ally "[t]o come over for sex[]" and the messages constituted a solicitation for sex with a child. After reading the messages aloud, Neely testified as follows:

> [Prosecutor]: Now, Detective Neeley, the Defense attorney asked you if it is highly corroborative of intent when somebody actually travels to a meeting with a purported child for sex; is that correct?
>
> [Neeley]: Correct.
>
> [Prosecutor]: So based on your training and experience, if this Defendant traveled all the way from just north of downtown Houston to 808 Gladstell in Conroe, Texas, to meet for sex, what would that say about his intent?
>
> [Neeley]: To have sex with a child.

On recross-examination, Neeley agreed that a critical piece of information is whether the initial contact is the undercover officer reaching out to a suspect or the suspect reaching out to the undercover officer. Neely agreed that in her work she did

13

not always document that kind of information. She also testified that she has not documented when system or application crashes have occurred. Neely explained that when a chat with a suspect turned sexual in nature, she would "make every attempt[]" to document those messages and preserve the information.

The State rested, and the defense also rested without calling any witnesses. The jury found Hanks guilty of the offense of online solicitation of a minor as alleged in the indictment.

Evidence During Punishment Phase of Trial

At the beginning of the punishment phase of trial, the State read the enhancement allegations against Hanks:

> . . . Defendant, Clifton Todd Hanks, was convicted of a felony, to wit, Driving While Intoxicated Third, on June 11, 2003, in the 183rd District Court, Harris County, Texas, in Cause No. 934805 under the name Clifton Todd Hanks, and said conviction became final prior to the commission of the aforesaid offense in count 1 of this indictment.
> . . . .
> . . . Defendant, Clifton Todd Hanks, was convicted of a felony, to wit, attempted burglary of a building, on February 25, 1980, in the 262nd District [C]ourt of Harris County, Texas, in Cause No. 309882, under the name Clifton Todd Hanks; and said conviction became final prior to the commission of the aforesaid offense in count 1 of this indictment.

Hanks pleaded "[n]ot true[]" to both allegations.

Testimony of Joe Nichols

Joe Nichols, an investigator from the Montgomery County District Attorney's office, testified that he is trained as a fingerprint expert, and he does fingerprint

14

comparisons. Nichols explained that, when he does comparisons, he uses a known print from a person from a certified document or one he himself has printed and compares it to another print, looking for unique characteristics and determining whether there is enough consistency to determine the prints are from the same person.

Nichols identified State's Exhibit 20 as a card he used to get a fingerprint of Hanks on April 25, 2023. Nichols also identified State's Exhibit 16 as a "pen pack[,]" which he explained is a penitentiary packet the Texas Department of Corrections creates when a person is sentenced to state prison and which includes a photograph, notations of tattoos (if any), fingerprints, criminal judgments, and a person's history at the penitentiary. He further testified that, when a person is arrested and booked into jail in a Texas county, the booking fingerprints are sent to the Texas Department of Public Safety ("DPS") for recordkeeping. According to Nichols, State's Exhibit 16 does not include readable or identifiable fingerprints.

Nichols testified that he compared the prints in State's Exhibit 20 with prints that were obtained when Hanks was booked into the Montgomery County jail, along with Hanks's name, his state identification number, and his date of birth. Nichols believed that the fingerprints from Exhibit 20 were the same as those obtained when Hanks was booked into jail in Montgomery County. According to Nichols, Exhibit 16 included a judgment for Clifton Todd Hanks from Harris County dated June 11,

2003, for a driving-while-intoxicated offense for which Hanks received a twelve-year sentence. Nichols agreed that the pen packet in State's Exhibit 16 was for a 2003 conviction for driving while intoxicated and that the indictment for the 2003 DWI included an enhancement paragraph for a 1980 conviction for felony attempted burglary of a building. The enhancement paragraph gives a date of February 25, 1980, for the date of commission and November 12, 1982, for the date of conviction for the burglary of a building. Nichols testified that the judgment for the driving-while-intoxicated offense reflects that Hanks pleaded "true" to the alleged enhancement.

Nichols identified State's Exhibit 17 as another pen packet for Clifton Todd Hanks for an offense of attempted burglary of a building. Nichols testified that he was not able to compare the fingerprints from the booking on that offense to Hanks's booking fingerprints in Montgomery County, but he was able to link the pen packet to Hanks by reference to a review of Hanks's criminal history, his name, the date of the offense, and the jurisdiction for the offense. The judgment for the burglary offense states the defendant's name as Clifton Todd Hanks and gives a date of February 9, 1980, for the date of commission of the crime. Both State's Exhibits 16 and 17 include a declaration from the custodian of records for TDCJ in Huntsville, stating that the records were made in the regular course of its business activity, were

16

made as a regularly conducted activity at or near the time of the occurrence as the matters set forth in the records by a person with knowledge of those matters.

Nichols identified State's Exhibit 18 as a pen packet for Clifton Todd Hanks for the offense of possession of a controlled substance, and the date of the judgment in the pen packet is April 23, 2018. Nichols also identified State's Exhibit 19 as a pen packet for Clifton Todd Hanks for the offense of forgery and the date of the judgment in Exhibit 19 is November 12, 1982.

Testimony of Cassie Reynolds

Cassie Reynolds, Hanks's sister, testified for the defense. Reynolds testified that there were three children in their family—she is the youngest and Hanks is the middle child. Reynolds recalled Hanks got in trouble at some point and spent time in prison. She also testified that Hanks had a problem with drugs for years. Reynolds agreed that due to a back injury from his truck driving work, Hanks could not continue working.

On cross-examination, Reynolds testified that she was "[n]ot real close[]" to her brother. She also testified that she was not close enough to Hanks to have known about the 1977 and 1980 offenses for which he was convicted.

Testimony of Clifton Hanks

Hanks testified in the punishment phase of the trial. He testified that he was sixty-five at the time of trial. When he was arrested, he was receiving disability and

17

retirement for a spinal cord injury, and he was not working. Hanks agreed he had received treatment for stage 4 prostate cancer, and some of his medical records were admitted in Defendant's Exhibit 3. He further testified that, when he was arrested, he did not own a vehicle and he was living in an RV in Houston. Hanks told the jury he believed "a whole lot different story[]" would result if Detective Dunn had preserved all of the messages in this case. He testified that he went to Conroe on the day he was arrested to "[k]ick somebody's butt that ha[d] been sexually harassing" him for more than three months. Hanks agreed there were two times when he was supposed to meet up with Ally, but he did not go and that he only went to meet Ally the third time because he was angry and was going to "knock the cr*p out of them." He also testified that he had been drinking that day and he took a "pill," and he agreed he brought drugs with him when he went to Conroe. Hanks agreed he was in a group chat on KIK that was sexual in nature, and the group was called "the gang bang club." Hanks agreed he had been arrested and convicted many times in his life, the first time was in 1977, and that he pleaded guilty to "[e]very single one of those convictions[.]"

On cross-examination, Hanks testified that 2003 was the last time he went to prison for driving while intoxicated and he pleaded true to that charge. He also agreed that although he had told the jury it was not true that he had been convicted

of attempted burglary of a building and forgery, those allegations are in fact true.

The following exchange occurred:

> [Prosecutor]: For the last 44 years, you have been in and out of prison for multiple offenses?
>
> [Hanks]: Correct.
>
> [Prosecutor]: That is including the burglary of a building we have seen, right?
>
> [Hanks]: Correct.
>
> [Prosecutor]: Forgery?
>
> [Hanks]: Correct.
> . . . .
> [Prosecutor]: Possession of a controlled substance?
>
> [Hanks]: Correct.
> . . . .
> [Prosecutor]: So fair to say from 1977 through 2021, you have never stopped committing crime?
>
> [Hanks]: I wouldn't say that. I mean, on and off, I guess, if you want to put it that way.

## Issues

Appellant raises fourteen issues on appeal, which we quote below:

Issue One: Was the evidence sufficient to support conviction of Appellant?

Issue Two: Was the evidence sufficient to prove proper venue?

Issue Three: Did the trial court err by overruling Appellant's Motion for New Trial?

Issue Four: Did the trial court err by failing to properly instruct the jury related to the enhancement paragraphs at punishment?

Issue Five: Was the evidence sufficient to punish Appellant as a habitual offender where it was not proven that Appellant was previously finally convicted of two felony offenses, and the second previous felony conviction was for an offense that occurred subsequent to the first previous conviction becoming final?

Issue Six: Did the trial court err by denying Appellant's request for a spoliation jury charge?

Issue Seven: Did the trial court err by admitting evidence related to child pornography and other investigations over a relevance objection?

Issue Eight: Did the trial court err by admitting evidence related to child pornography and other investigations over an objection pursuant to Tex. R. Evid. 403?

Issue Nine: Did the trial court err by denying Appellant's Motion to Suppress due to lack of authenticity?

Issue Ten: Did the trial court err by denying Appellant's Motion to Suppress due [to] a violation of Code of Criminal Procedure Art. 39.14?

Issue Eleven: Did the trial court err by denying Appellant's Motion to Suppress due to a *Brady* Violation?

Issue Twelve: Did the trial court err by admitting State's Ex. 2 where there was a lack of foundation?

Issue Thirteen: Did the trial court err by admitting State's Ex. 16, a pen packet, where it was not proven that Appellant was the same person in the pen packet and it was irrelevant?

Issue Fourteen: Did the trial court err by admitting State's Ex. 17, a pen packet, where it was not proven that Appellant was the same person in the pen packet and it was irrelevant?

Sufficiency of the Evidence
(Issue One)

In his first issue, Appellant argues that the evidence at trial is not sufficient to support his conviction. Specifically, he contends that the evidence is not sufficient for a jury to reasonably infer that he intended to solicit a minor. Hanks argues "Appellant did not travel to meet two (2) times which means that he did not have the necessary intent." Appellant points to other evidence he claims shows a lack of intent, including that when he arrived at the encounter where he was arrested, he did not have condoms; and further he argues the first contact may have been initiated by law enforcement. Hanks does not make any argument about whether he *knowingly* solicited a minor, nor does he argue he did not believe Ally was younger than seventeen.[2]

In reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt.

---

[2] The Online Solicitation of a Minor Statute defines a "minor" as follows:

(a) In this section:
   (1) "Minor" means:
      (A) an individual who is younger than 17 years of age; or
      (B) an individual whom the actor believes to be younger than 17 years of age.

Tex. Penal Code Ann. § 33.021(a).

*Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We give deference to the factfinder's responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13. If the record contains conflicting inferences, we must presume that the factfinder resolved such facts in favor of the verdict, and we defer to that resolution. *Brooks v. State*, 323 S.W.3d 893, 899 n.13 (Tex. Crim. App. 2010) (citing *Jackson*, 443 U.S. at 326); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). The jury as factfinder is the sole judge of the weight of the evidence and credibility of the witnesses, and a jury may believe all, some, or none of the testimony presented by the parties. *See Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018) (citing *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000), *overruled on other grounds by Laster v. State*, 275 S.W.3d 512 (Tex. Crim. App. 2009)); *Heiselbetz v. State*, 906 S.W.2d 500, 504 (Tex. Crim. App. 1995). The appellate court does not reweigh the evidence nor determine the credibility of the evidence, nor does it substitute its own judgment for that of the factfinder. *Febus*, 542 S.W.3d at 572; *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

"Direct and circumstantial evidence are treated equally: 'Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt.'" *Clayton*, 235

S.W.3d at 778 (quoting *Hooper*, 214 S.W.3d at 13). Each fact need not point directly and independently to the guilt of the defendant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Temple v. State*, 390 S.W.3d 341, 359 (Tex. Crim. App. 2013); *Hooper*, 214 S.W.3d at 13; *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993).

> A person commits the crime of online solicitation of a minor if
>
> . . . the person, over the Internet, by electronic mail or text message or other electronic message service or system, or through a commercial online service, knowingly solicits a minor to meet another person, including the actor, with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse with the actor or another person.

Tex. Penal Code Ann. § 33.021(c). The gravamen of the offense is "the conduct of requesting a minor to engage in illegal sexual acts[.]" *See Ex parte Lo*, 424 S.W.3d 10, 17 (Tex. Crim. App. 2013). The statute expressly states: "It is not a defense [] that the meeting did not occur." *See* Tex. Penal Code Ann. § 33.021(d).[3]

---

[3] Applying the previous version of section 33.021(d), this Court stated:

> Because the requisite intent arises within the conduct of soliciting a minor, "[] it does not matter whether the solicited meeting actually occurs…."

*Ganung v. State*, 502 S.W.3d 825, 828 (Tex. App.—Beaumont 2016, no pet.) (quoting *Ex parte Zavala*, 421 S.W.3d 227, 232 (Tex. App.—San Antonio 2013, pet. ref'd)). As we explained in *Ganung*, the State has the burden of proof to show that the defendant knowingly solicited the minor to meet with intent that the minor engage in sexual conduct at the time of the solicitation, and the offense is complete

23

Under the statute, the State has the burden of proof to show that a defendant "knowingly solicited" a minor with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse with the actor or another person. Tex. Penal Code Ann. § 33.021(c). It follows then, that for purposes of an offense under section 33.021(c) of the Texas Penal Code, the offense has been completed when the defendant knowingly solicits the minor with the intent that the minor will engage in sexual conduct as outlined in the statute. *See Tuazon v. State*, 661 S.W.3d 178, 183 (Tex. App.—Dallas 2023, no pet.); *see also Ganung v. State*, 502 S.W.3d 825, 828 (Tex. App.—Beaumont 2016, no pet.) (discussing the 2015 version of the online solicitation statute).

Under the Texas Penal Code,

(a) A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

(b) A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

---

at the time of the solicitation. *Ganung*, 502 S.W.3d at 829; *Ex parte Wheeler*, 478 S.W.3d 89, 95-96 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd).

24

Tex. Penal Code Ann. § 6.03(a), (b). Intent is a fact issue for the factfinder (here, the jury) to determine from all the circumstances. *Smith v. State*, 965 S.W.2d 509, 518 (Tex. Crim. App. 1998). The factfinder may infer a defendant's intent from his actions, words, and conduct. *See Session v. State*, 680 S.W.2d 549, 552 (Tex. App.— Beaumont 1984, no pet.) (citing *Dues v. State*, 634 S.W.2d 304, 305 (Tex. Crim. App. 1982); *Beltran v. State*, 593 S.W.2d 688, 689 (Tex. Crim. App. 1980)).

Detective Dunn testified that in a KIK message in April of 2021, Hanks texted to Dunn's undercover persona Ally, "F**k you hard" and "I want to f**k you today, want my c**k in you[.]" A screenshot of this message was admitted as State's Exhibit 2. Dunn also testified that, in the hours leading up to Hanks's arrest, he messaged "Ally" through the KIK app saying he needed to pick her up and he told Ally, "You need to play spending the night with a friend[.] Rubbing my c**k[.] Watching porn[.]" He sent her sexually explicit photos and videos. He further texted to her, "We are going straight to getting a buzz and naked[.] Oral I like giving as mu[c]h as receiving[.]" Hanks told Ally he wanted them to take a shower together. In one message exchange, Ally told Hanks she should tell her mother she was going to a friend's house, and Hanks replied that he was on his way and needed an address from her. He messaged her that he was in a black Chrysler and was on his way. During these communications, Ally again messaged that she was fourteen years old. Hanks also told Ally to "[m]ake sure your ready [] To get in the car[.]" According

to Dunn, after the last message from Hanks and when Hanks pulled into the location where he agreed to meet Ally, officers pulled in and arrested Hanks.

Detective Dunn's screenshots of his messages with Hanks while Dunn was posing as Ally were admitted as State's Exhibits 2 and 3. Investigator Neeley testified that she found KIK messages from Hanks to Ally on one of Hanks's phones and that State's Exhibit 11 from Hanks's phone had the same content as State's Exhibit 3.

On this record, the jury could have reasonably concluded that Hanks communicated over the internet with Ally who informed Hanks she was a minor, younger than seventeen years of age. *See* Tex. Penal Code Ann. § 33.021(a). The jury also could have inferred that Hanks "knowingly solicited" Ally (a minor) with "the intent to engage in sexual contact, sexual intercourse, or deviate sexual intercourse." *See id.* § 33.021(c). Hanks does not dispute that the messages between Hanks and Detective Dunn (posing as Ally) were over the internet or another electronic messaging service. Hanks also does not cite any legal authority requiring evidence about who started the communication. *See* Tex. R. App. P. 38.1(i). There was testimony that Hanks had at some point agreed to meet Ally sometime before he was arrested and Hanks failed to appear for those meetings, but it was up to the jury to decide the weight and credibility of this testimony. *See Hooper*, 214 S.W.3d at 13; *Smith*, 965 S.W.2d at 518; *Session*, 680 S.W.2d at 552.

26

Based on the record before us, we conclude the jury could have reasonably concluded beyond a reasonable doubt from the evidence presented that Hanks committed the offense of online solicitation of a minor, as alleged in the indictment. We further conclude the evidence was sufficient and that "[t]his was not a determination so outrageous that no rational trier of fact could agree." *Wirth v. State*, 361 S.W.3d 694, 698 (Tex. Crim. App. 2012). We overrule Appellant's first issue.

Proof of Venue
(Issue Two)

In his second issue, Appellant argues that the evidence was insufficient to prove venue. According to Appellant, while multiple events in the case occurred in "Montgomery County," the evidence did not establish that the events occurred in Montgomery County, Texas. Appellant further argues that the case should be reversed, and a judgment of acquittal should be entered because of this alleged deficiency.

To support a conviction, the evidence must be adequate for the factfinder to rationally find the essential elements of the crime beyond a reasonable doubt. *Schmutz v. State*, 440 S.W.3d 29, 34 (Tex. Crim. App. 2014) (citing *Jackson*, 443 U.S. at 319). An "element" is a fact that is legally required for a factfinder to convict a person of a substantive offense. *Id*; *see also* Tex. Penal Code Ann. § 1.07(a)(22) (defining "element of offense" to include conduct, result, culpability elements, as well as "negation of any exception"). The Texas Court of Criminal Appeals has held

27

that venue is not an "element of the offense" because it is not a "criminative fact." *Schmutz*, 440 S.W.3d at 34 (quoting *Boyle v. State*, 820 S.W.2d 122, 140 (Tex. Crim. App. 1989), *overruled on other grounds by Gordon v. State*, 801 S.W.2d 899 (Tex. Crim. App. 1990)). The Court further explained that our Rules of Appellate Procedure permit appellate courts to presume that venue was established unless it was disputed in the trial court, or the record affirmatively shows the contrary. *Id.* at 35 (citing Tex. R. App. P. 44.2(c)(1) (permitting appellate presumption on proof of venue); *State v. Mason*, 980 S.W.2d 635, 641 (Tex. Crim. App. 1998) (citing venue and jurisdiction as distinct from elements of offense)).

Appellant does not argue that he challenged venue in the trial court, nor does the record show that he did so. Detective Dunn testified at trial that Hanks sent him a message that Hanks lived in Houston, "two blocks from Moody Park[.]" Copies of Dunn's screenshots of messages that were admitted at trial include a message from Hanks stating, "I'm just north of downtown Houston[.]" Also admitted at trial was a map showing a route from Hanks's address in Houston to Conroe, and messages from Dunn (posing as Ally) include a message asking Hanks how far he was from Conroe. The evidence also includes evidence that Hanks sent messages to Dunn (Ally) when Hanks neared the location of the scheduled meeting and when he was in Montgomery County for the meeting. Hanks also signed a "Consent to Search Digital Storage Devices" signed by Hanks on letterhead of the District Attorney for

Montgomery County, and the letterhead provides an address in Conroe, Texas. As we have explained herein, circumstantial evidence is as probative as direct evidence. *See Clayton*, 235 S.W.3d at 778; *Hooper*, 214 S.W.3d at 13.

We conclude that the evidence does not show that venue was disputed, nor does it show that venue was affirmatively proved to be in a county *other* than Montgomery County, Texas. Therefore, we apply the presumption that venue was correct as provided in our Rules of Appellate Procedure. *See* Tex. R. App. P. 44.2(c)(1). We overrule Appellant's second issue.

### Spoliation and Nondisclosure of Evidence
### (Issue Six)

In his sixth issue, Appellant argues that the trial court should have included the spoliation instruction he requested because the State failed to preserve material, exculpatory evidence. According to Appellant, a "multitude" of text messages were not preserved, and such messages were material, exculpatory, and favorable to Appellant, so that there is a reasonable probability that, if such evidence had been disclosed, the outcome of the trial could have been different. In particular, Appellant contends that messages about him not showing up for a "scheduled encounter[]" were "both exculpatory and material[.]" Appellant asserts that he was harmed by the trial court's denial of the adverse-inference instruction he requested, and a new trial should be granted.

29

We review a claim of alleged jury charge error using a two-step process in which we examine (1) whether error existed in the charge and (2) whether sufficient harm resulted from the error to require reversal. *Ngo v. State*, 175 S.W.3d 738, 743-44 (Tex. Crim. App. 2005) (en banc). Where, as here, the defendant properly objected to the charge at trial, jury charge error requires reversal if we find "some harm" to his rights. *Id.* (citing *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). The *Almanza* standard requires that an appellant show actual, and not theoretical, harm from jury instruction error. *Id.* at 750; *see also Cornet v. State*, 417 S.W.3d 446, 449 (Tex. Crim. App. 2013).

Spoliation concerns the loss or destruction of evidence. *See Guzman v. State*, 539 S.W.3d 394, 401 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (citing *Torres v. State*, 371 S.W.3d 317, 319 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd)). In a criminal case, when spoliation concerns potentially useful evidence, the defendant bears the burden of establishing that the State lost or destroyed the evidence in bad faith. *Id.* (citing *Ex parte Napper*, 322 S.W.3d 202, 229 (Tex. Crim. App. 2010); *Torres*, 371 S.W.3d at 319).

> Bad faith requires a showing of "some sort of improper motive, such as personal animus against the defendant or a desire to prevent the defendant from obtaining evidence that might be useful." [*Napper*, 322 S.W.3d at 238.] When conduct can, at worst, be described as negligent, the failure to preserve evidence does not rise to the level of a due process violation. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).

30

*Id.* at 402.

The duty to preserve evidence is limited to evidence that possesses an exculpatory value that was apparent before the evidence was destroyed. *Id.* at 401 (citing *White v. State*, 125 S.W.3d 41, 43-44 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). The Supreme Court has explained:

> Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

*California v. Trombetta*, 467 U.S. 479, 488-89 (1984) (citation omitted).

In civil cases, a party who has deliberately destroyed evidence is presumed to have done so because the evidence was unfavorable to its case, and the Court of Criminal Appeals has held that in criminal cases, a similar presumption arises when a party controlling missing evidence cannot explain the State's failure to produce the missing evidence. *See State v. Lerma*, 639 S.W.3d 63, 69 (Tex. Crim. App. 2021) (citing *Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 22 (Tex. 2014); *Wal-Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 721 (Tex. 2003)). On appeal, an appellant who was denied a spoliation instruction must affirmatively show that the lost evidence was favorable and material to his defense. *Guzman*, 539 S.W.3d at 401 (citing *White*, 125 S.W.3d at 44).

At trial, Detective Dunn testified that he did not have screenshots of his conversations with Hanks from March and a part of April of 2021 because KIK crashed and he had not taken screenshots of all of his conversations. Dunn further testified that KIK does not crash often, but when it does, there is no way to recover the lost messages. On cross-examination, Dunn testified that it is easy to take a screenshot of a message, and that he could have taken screenshots "in the beginning of the communication with Mr. Hanks[.]" He also agreed that there was a time when Hanks had agreed to a meeting, but Hanks did not show up, and Dunn did not document that in his files. Dunn further testified that KIK does not store old messages in "the cloud," so he would not be able to get messages that had been lost when KIK crashed. When asked whether this would make screenshotting messages important, Dunn replied that, in his work, he is often messaging with multiple suspects at the same time, that his phone did not have enough storage to save screenshots of every conversation, and if he took screenshots of everything, "all [he] would be doing every day is screen shotting." Investigator Neeley testified that KIK does not store messages and there are no tools or programs that would allow someone to get messages that are lost when KIK crashes.

The defense argued to the trial court that it was "fighting against something that hasn't been turned over[.]" The State responded that "KIK [] is not monitored or run by law enforcement[,] that is a private company, and this officer has no control

over what they keep or do not keep in their records." The defense requested the following spoliation instruction:

> The State of Texas had a duty to retain all communications between law enforcement officers and Defendant, including electronic mail or text message or other electronic message service or system, or through a commercial online service, that occurred during the investigation. These communications were deleted or not preserved by law enforcement while in their care, custody, management and control. During your deliberations, you may consider that this evidence would have been unfavorable to the State.

The trial court denied the requested instruction.

On this record, we cannot say the trial court erred because Appellant failed to show that the lost messages had an exculpatory value that was apparent before the evidence was destroyed, and Appellant failed to show the messages were favorable and material to his defense. *See id.* Additionally, the trial court could have reasonably concluded that the State provided an explanation for the failure to produce the messages that had been lost when KIK crashed, and even if the lost messages concern potentially useful evidence, the defendant failed to meet his burden of establishing that the State lost or destroyed the evidence in bad faith. *See Lerma*, 639 S.W.3d at 69 (citing *Aldridge*, 438 S.W.3d at 22; *Johnson*, 106 S.W.3d at 721); *Napper*, 322 S.W.3d at 229; *Guzman*, 539 S.W.3d at 402. Also, Appellant makes only a conclusory assertion that he was harmed. *See* Tex. R. App. P. 38.1(i); *Bohannan v. State*, 546 S.W.3d 166, 179-80 (Tex. Crim. App. 2017) (concluding that appellant's conclusory argument on appeal was inadequate). That said, because

33

we conclude that the trial court did not err by denying the requested instruction, we need not examine whether Appellant was harmed. *See Ngo*, 175 S.W.3d at 743-44. We overrule Appellant's sixth issue.

### Admission of Evidence
### (Issues Seven and Eight)

We address Appellant's seventh and eighth issues together because both pertain to the admission of evidence. In his seventh issue, Appellant argues that the trial court erred by overruling his objection to the relevance of "evidence of child pornography and other investigations." In his eighth issue, Appellant argues that the trial court erred by admitting "evidence of child pornography and other investigations" because the evidence was more prejudicial than probative.

Appellant's brief does not cite to any part of the record where he contends the complained-of evidence appears for each of these issues. Neither does the brief explain why the unidentified complained-of evidence is not relevant or why it is more prejudicial than probative. An appellant's brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record. Tex. R. App. P. 38.1(g), (i). To comply with the Rules of Appellate Procedure, an appellant must not only cite existing and relevant legal authority, but also apply the facts to the cited law to show how the trial court committed error. *See Trimble v. State*, No. 09-23-00183-CV, 2024 Tex. App. LEXIS 3587, at **8-9 (Tex. App.—Beaumont May 23, 2024, no pet.) (mem. op.) (citing Tex. R. App. P. 38.1(i);

34

*Broussard v. Vicknair*, No. 09-21-00391-CV, 2023 Tex. App. LEXIS 9371, at *43 (Tex. App.—Beaumont Dec. 14, 2023, no pet.) (mem. op.); *Golden v. Milstead Towing & Storage*, Nos. 09-21-00043-CV, 09-21-00044-CV, & 09-21-00045-CV, 2022 Tex. App. LEXIS 2988, at *9 (Tex. App.—Beaumont May 5, 2022, no pet.) (mem. op.)). It is not enough to list authorities in support of a conclusory argument; an appellant must also apply the authorities to the applicable facts, and we have no obligation to construct an appellant's argument or analysis for him. *See Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008); *Smith v. State*, 907 S.W.2d 522, 532 (Tex. Crim. App. 1995).

We review a trial court's ruling on the admission of evidence under an abuse of discretion standard. *See Henley v. State*, 493 S.W.3d 77, 82-83 (Tex. Crim. App. 2016). Even assuming Appellant adequately briefed these issues, we conclude based on the record before us that the trial court did not err. The trial court explained on the record that Detective Dunn's testimony about "child pornography and other investigations" he has worked on was relevant to inform the jury about the nature of the Detective's work, about the Internet Crimes Against Children task force, and about the use of the KIK app. The trial court could reasonably have determined that the Detective's testimony would be helpful to the jury regarding the investigation in the context of the alleged crime. *See Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009); *Montgomery v. State*, 810 S.W.2d 372, 376 (Tex. Crim. App.

35

1990) (op. on reh'g). We presume the trial court engaged in a Rule 403 balancing test before overruling Appellant's objection at trial, and Appellant has provided no analysis to the contrary. *See Williams v. State*, 958 S.W.2d 186, 195-96 (Tex. Crim. App. 1997). Further, Appellant has not articulated how his substantial rights were affected by the admission of the evidence. *See* Tex. R. App. P. 44.2(b); *Gonzales v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018). We overrule Appellant's seventh and eighth issues.

## Authentication of Evidence
### (Issues Nine and Twelve)

In his ninth issue, Appellant argues that the trial court erred in admitting State's Exhibit 3 because there was a lack of authenticity due to missing evidence. In his twelfth issue, Appellant argues that the trial court erred in admitting State's Exhibit 2 because it lacked authentication and a foundation. Specifically, Appellant argues that Detective Dunn could not testify from his personal knowledge about the date and time of the communications in Exhibit 2, and the State refreshed the Detective's memory "via a master suspect's log folder that contained a date *modified*[.]" Appellant argues that the "log indicates the message was modified" and the image was not consistent with other images offered. Appellant further argues that Exhibit 2 "does not contain a date or time identification and has a different appearance than other communications offered." Appellant contends "authenticity

is lacking[]" as to Exhibits 2 and 3 when considered under *Tienda v. State*, 358 S.W.3d 633 (Tex. Crim. App. 2012).

We review a trial court's ruling on authentication for an abuse of discretion. *Fowler v. State*, 544 S.W.3d 844, 848 (Tex. Crim. App. 2018). Under this deferential standard, if the trial court's ruling is within the zone of reasonable disagreement, an appellate court must uphold the court's admissibility decision. *Id.* Rule 901, which governs the authentication requirement for the admissibility of evidence, requires the proponent of an item of evidence to "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Tex. R. Evid. 901(a). In *Tienda*, the Court of Criminal Appeals explained that "the provenance of [] electronic writings can sometimes be open to question[,]" but electronic evidence may be authenticated in a number of ways as long as the evidence is "sufficiently linked to the purported author so as to justify submission to the jury for its ultimate determination of authenticity." 358 S.W.3d at 639-40.

The authentication requirement is a liberal standard of admissibility. *Fowler*, 544 S.W.3d at 848-49 (quoting *Butler v. State*, 459 S.W.3d 595, 600 (Tex. Crim. App. 2015)). The proponent has to produce sufficient evidence from which a reasonable factfinder could properly find genuineness. *Tienda*, 358 S.W.3d at 638. Conclusive proof of authenticity is not required. *Fowler*, 544 S.W.3d at 848. Evidence may be authenticated by direct testimony from a witness with personal

37

knowledge, by comparison with other authenticated evidence, or by circumstantial evidence. *Tienda*, 358 S.W.3d at 638. The trial court need only make a preliminary determination that the proponent of the evidence has supplied facts sufficient to support a reasonable jury determination that the proffered evidence is authentic. *Fowler*, 544 S.W.3d at 849. It is up to the jury to make the final determination of whether the evidence is what the proponent claims it to be. *Butler*, 459 S.W.3d at 600.

Any complaint that an exhibit is inaccurate goes to the weight of the evidence and not to its admissibility. *See Robinson v. State*, 739 S.W.2d 795, 802 (Tex. Crim. App. 1987) (en banc); *Hasley v. State*, 786 S.W.2d 733, 735 (Tex. App.—Beaumont 1989, pet. ref'd). In a previous memorandum opinion involving an online solicitation case, we determined that photographs of text messages were adequately authenticated when the witness (through whom the messages were offered) testified that she took the photographs, and she knew the conversation was with the defendant. *See Coe v. State*, Nos. 09-13-00409-CR & 09-13-00410-CR, 2015 Tex. App. LEXIS 6374, at **27-28 (Tex. App.—Beaumont June 24, 2015, pet. ref'd) (mem. op., not designated for publication). We explained:

> The events surrounding the messages sent to [the victim's] sister indicate circumstantially that [the defendant] was the author of the text messages. *See Tienda*, 358 S.W.3d at 641. When considered in combination with other circumstantial evidence in the record and the fact that Coe arrived in person at the designated place and time and announced his arrival by the same cellphone number, we hold a

38

reasonable factfinder could have believed the text messages were created and sent by [the defendant].

*Id.* Our sister courts have also concluded that when authenticating an electronic communication, a witness qualifies as having knowledge of the communication when he participated in an exchange of messages and can testify to an exhibit's fair and accurate depiction of the messages exchanged. *See Chavezcasarrubias v. State*, No. 02-14-00418-CR, 2015 Tex. App. LEXIS 10652, at \*\*4-5 (Tex. App.—Fort Worth Oct. 15, 2015, no pet.) (mem. op., not designated for publication) (citing Tex. R. Evid. 901(b)(1); *Aekins v. State*, No. 04-13-00064-CR, 2013 Tex. App. LEXIS 13694, at \*\*13-16 (Tex. App.—San Antonio Nov. 6, 2013) (mem. op., not designated for publication), *aff'd*, 447 S.W.3d 270 (Tex. Crim. App. 2014); *Ussery v. State*, No. 03-07-00116-CR, 2008 Tex. App. LEXIS 741, at \*22 (Tex. App.—Austin Jan. 30, 2008, pet. ref'd) (mem. op., not designated for publication)); *see also Peña v. State*, 467 S.W.3d 71, 75 (Tex. App.—San Antonio 2015, no pet.). Potential discrepancies between or within exhibits may go to the weight of the evidence, but not its admissibility. *Hoover v. State*, No. 09-15-00255-CR, 2017 Tex. App. LEXIS 3668, at \*5 (Tex. App.—Beaumont Apr. 26, 2017, pet. ref'd) (mem. op., not designated for publication) (citing *Peña*, 467 S.W.3d at 75).

At trial, Detective Dunn identified State's Exhibit 2 as a copy of a screenshot he took of a text message exchange between himself (posing as Ally) and Hanks in April of 2021. He also identified State's Exhibit 3 as a screenshot of text messages

39

between himself (posing as Ally) and Hanks between April 29 and May 19 of 2021. He testified that he used his undercover iPhone for the messaging and to take the screenshots.

The evidence includes a "Consent to Search Digital Storage Devices" form signed by Hanks. Investigator Neeley testified that she found messages between Hanks and Ally on one of Hanks's phones, and she testified that State's Exhibit 11 (data from Hanks's phone) had the same content as Detective Dunn's screenshots contained in State's Exhibit 3. Neeley concluded that Hanks was communicating with "Ally," Dunn's undercover persona, because the messages on Hanks's phone matched the screenshots that Dunn took.

On the record before us, the trial court could have reasonably concluded that Dunn created the screenshots that were admitted as State's Exhibits 2 and 3, so that he was a person with personal knowledge under Rule 901. *See* Tex. R. Evid. 901(a), (b)(1); *Tienda*, 358 S.W.3d at 638. Dunn qualifies as having knowledge because he testified that he participated in the exchange of messages. *See Peña*, 467 S.W.3d at 75. Further, Investigator Neeley testified that the messages extracted from Hanks's own phone match the screenshots that Dunn took. Therefore, Detective Dunn's testimony, considered together with Investigator Neeley's testimony and other evidence submitted at trial (and not challenged by Appellant), were sufficient for the trial court to conclude that the State had supplied facts sufficient to support a

reasonable jury determination that State's Exhibits 2 and 3 were authentic. *See Fowler*, 544 S.W.3d at 849. Any alleged missing data in the evidence or inconsistencies with other evidence would go to the weight, and not the authenticity, of the challenged exhibits. *See Robinson*, 739 S.W.2d at 802; *Hoover*, 2017 Tex. App. LEXIS 3668, at *5; *Hasley*, 786 S.W.2d at 735. We overrule Appellant's ninth and twelfth issues.

State's Duty of Disclosure
(Issues Ten and Eleven)

In Appellant's tenth issue, he argues that the trial court erred by not suppressing evidence because the State did not comply with its discovery obligations under article 39.14 of the Code of Criminal Procedure. According to Appellant, the State failed to disclose evidence to the defense that was favorable to Hanks "in that it would have shown the first contact, who made it, how it was made, what was said, and actions taken by Appellant which were consistent with a lack of intent." Appellant further argues that the undisclosed evidence "was material because it would have provided context to the messages which followed, went to an element of the case, specifically intent, and given a full picture to the jury of Appellant's purported actions." In his eleventh issue, Appellant argues that the State's failure to preserve all the messages and its failure to disclose them was a *Brady* violation. *See Brady v. Maryland*, 373 U.S. 83 (1963).

41

At trial, the defense counsel asked the trial court to suppress all the electronic messages because there was missing evidence. Defense counsel objected and argued as follows:

> I am fighting against messages that I don't have because the officer failed to preserve them. And it is an element of the offense -- electronic communication devices messages.
> . . . .
> I want information related to how and why that information is not preserved, how many times the app crashed -- because that is going to be his explanation. And the State has given me no information about how many times it has crashed, if he reinstalled the app.
>     I am fighting against something that hasn't been turned over to me. And it is an undercover sting operation on the Internet with weeks of communications that are missing that add context, that adds luring. I have no idea who initiated contact.
> . . . .
> Under 39.14 I get written communication by an officer.
> . . . .
> Judge, I think that is Brady. I should be given it from the officer. It is not from KIK.

The trial court explained that sometimes technology, such as a body camera, fails for no known reason, but that does not mean that evidence that was preserved should not be admitted, and any incompleteness goes to the weight and not the admissibility of the evidence. The trial court further stated that the defense could cross-examine Detective Dunn to test his credibility and to ask about actions he did not take or things he might have done better. The trial court further explained, "I don't have anything before me right now that there was anything intentional to try

42

to deceive the Court or deceive the jury or to manipulate or under 38.23 that they violated any law or anything."

We apply a bifurcated standard of review of a trial court's ruling on a motion to suppress, giving almost total deference to a trial court's determination of historical facts and reviewing the court's application of the law under a de novo standard. *See Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000) (citing *Guzman v. State*, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997)). Where a trial court does not make explicit findings, we review the evidence in a light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact supported in the record that support its conclusion. *See id.* at 327-28 (citing *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999); *State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999)).

Under article 39.14(h) of the Texas Code of Criminal Procedure, the State has the duty to disclose "any exculpatory, impeachment, or mitigating document, item, or information in the possession, custody, or control of the state that tends to negate the guilt of the defendant or would tend to reduce the punishment for the offense charged." *See* Tex. Code Crim. Proc. Ann. art. 39.14(h). Appellant does not argue that article 39.14(h) imposes an affirmative duty to preserve evidence. Detective Dunn testified that he does not always take screenshots of his messages with suspects because he is often dealing with multiple suspects at a time, it would take too much

43

time to screenshot everything, and his phone does not have enough storage to save every message. He also testified that when the KIK system crashes, any previous messages are lost and KIK does not retain the messages. Viewing the evidence in the light most favorable to the trial court's ruling, the trial court could reasonably have determined that the missing messages were not in the possession, custody, or control of the State, and there was no article 39.14(h) violation. *See id.*; *Carmouche*, 10 S.W.3d at 327-28. We overrule Appellant's tenth issue.

A *Brady* violation occurs when the State suppresses—willfully or inadvertently—evidence that is favorable to the appellant. *Harm v. State*, 183 S.W.3d 403, 406 (Tex. Crim. App. 2006). The *Brady* obligation generally "does not require prosecuting authorities to disclose exculpatory information to defendants that the State does not have in its possession and that is not known to exist." *State v. Heath*, No. PD-0156-22, 2024 Tex. Crim. App. LEXIS 446, at **33-34 (Tex. Crim. App. June 14, 2024) (quoting *Harm*, 183 S.W.3d at 406). However, "the government is constitutionally required to preserve evidence that might be expected to play a significant role in the suspect's defense." *Little v. State*, 991 S.W.2d 864, 866 (Tex. Crim. App. 1999). If the State fails to preserve evidence that is exculpatory and material, then a due process violation has occurred regardless of the good or bad faith on the part of the State in failing to preserve that evidence. *See Illinois v. Fisher*, 540 U.S. 544, 547 (2004); *Youngblood*, 488 U.S. at 57-58; *State v. Fellows*, 471

44

S.W.3d 555, 563 (Tex. App.—Corpus Christi–Edinburg 2015, pet. ref'd). If the State fails to preserve potentially useful evidence, the defendant must go a step further and demonstrate that the State failed to preserve that evidence in bad faith. *See Fisher*, 540 U.S. at 547; *Youngblood*, 488 U.S. at 57-58; *Fellows*, 471 S.W.3d at 563. Evidence is material under a constitutional standard when the missing evidence has an exculpatory value that was apparent before the evidence was destroyed or lost and is of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. *Trombetta*, 467 U.S. at 489. A *Brady* claim requires proof that the evidence was both material and favorable to the defendant such that there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different. *Ex parte Miles*, 359 S.W.3d 647, 665 (Tex. Crim. App. 2012).

Favorable evidence is any evidence that, if disclosed and used effectively, may make a difference between conviction and acquittal, and includes both exculpatory and impeachment evidence. *Harm*, 183 S.W.3d at 408 (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985); *Thomas v. State*, 841 S.W.2d 399, 404 (Tex. Crim. App. 1992)). Exculpatory evidence may justify, excuse, or clear the defendant from fault, while impeachment evidence is that which disputes or contradicts other evidence. *Id.* Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the

proceeding would have been different. *Bagley*, 473 U.S. at 682; *see also Ex parte Adams*, 768 S.W.2d 281, 291 (Tex. Crim. App. 1989) (adopting *Bagley* standard of materiality); *Miles*, 359 S.W.3d at 665. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682 (quoting *Strickland v. Washington*, 466 U.S. 688, 694 (1984)). Materiality is determined by examining the alleged error in the context of the entire record and overall strength of the state's case. *Harm*, 183 S.W.3d at 409.

Appellant argues that the missing evidence (the KIK messages that were lost when KIK crashed) was material because "it would have provided context to the messages which followed, went to an element of the case, specifically intent, and [would have] given a full picture to the jury of Appellant's purported actions." According to Appellant, the missing evidence would have been favorable to him because it would have shown who made the first contact and conduct by Appellant that was inconsistent with a lack of intent. Appellant acknowledges the situation in this case is the failure to preserve evidence, and he argues that the police's failure to preserve the missing messages was in bad faith because Detective Dunn knew how to preserve messages by taking screenshots, he did so "routinely," and he was familiar with the KIK app. The defense cross-examined Detective Dunn about his practices and his messaging with Hanks, and Dunn testified about one occasion when there had been a planned meeting, but Hanks did not show up. Appellant's

46

brief does not argue that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *See id.*; *Adams*, 768 S.W.2d at 291. In addition, Appellant's brief does not identify evidence in the record from which the trial court could have concluded that the State acted in bad faith in failing to preserve the missing KIK messages. *See Fisher*, 540 U.S. at 547; *Youngblood*, 488 U.S. at 57-58; *Fellows*, 471 S.W.3d at 563. The trial court could have reasonably concluded that Hanks failed to show that the missing evidence was material and exculpatory under the standard articulated in *Bagley*. *See* 473 U.S. at 682. We conclude that the trial court did not err by denying Appellant's motion to suppress, and we overrule the eleventh issue.

Admission of the Pen Packets
(Issues Thirteen and Fourteen)

In issues thirteen and fourteen, Appellant argues that the trial court erred by admitting State's Exhibits 16 and 17 (pen packets). According to Appellant, Exhibit 16 includes no fingerprints, although Appellant admits it includes "other identifiers." Appellant argues that the "other identifiers" in the pen packets are not sufficient to prove beyond a reasonable doubt that Appellant was the same person as indicated in State's Exhibit 16, and the exhibit was inadmissible for lack of relevance. As to Exhibit 17, Appellant argues that this pen packet "had a differently spelled last name than Appellant." Because of the differently spelled name and the lack of any fingerprints in the pen packet, Appellant argues that this pen packet was

47

inadmissible. Appellant further argues that in the absence of independent testimony that Appellant was the person convicted of the offense shown in each of the pen packets, the pen packets are inadmissible, citing *Rose v. State*, 507 S.W.2d 547, 548 (Tex. Crim. App. 1974). According to Appellant, because the pen packets did not include usable fingerprints, a print comparison could not be made, and the State did not sufficiently link Appellant to the prior judgments contained in the pen packets.

We have previously explained herein that we review a trial court's ruling on the admission of evidence under an abuse of discretion standard. *See Henley*, 493 S.W.3d at 82-83. The preliminary decision of whether to admit evidence is to be decided by the trial court, but as we have explained that determination is not a particularly "high hurdle" of admissibility. *See Campbell v. State*, 382 S.W.3d 545, 549 (Tex. App.—Austin 2012, no pet.) (citing *United States v. Tin Yat Chin*, 371 F.3d 31, 37 (2d Cir. 2004) (explaining that Rule 901 does not establish a particularly high hurdle, and that hurdle may be cleared by circumstantial evidence)). The threshold inquiry made by the trial court is whether or not the proponent of the evidence supplied facts that are sufficient for a reasonable jury determination that the evidence is authentic. *Id*.

"[T]o establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that (1) a prior conviction exists, and (2) the defendant is linked to that conviction." *Henry v. State*, 509 S.W.3d 915, 918 (Tex.

48

Crim. App. 2016) (citing *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007)). No specific document or mode of proof is required to prove these two elements. *Id.* Evidence of a certified copy of a final judgment and sentence may be a preferred and convenient means, but the State may use other types of evidence to prove an enhancement. *Id.* Examples of acceptable evidence include the admission or stipulation of the defendant, testimony by people present at the time of the defendant's conviction and who can identify the defendant as the person convicted, and documentary proof which contains sufficient information to establish that a prior conviction exists and the defendant's identity as the person convicted. *Id.* (citing *Flowers*, 220 S.W.3d at 921-22).

The Court of Criminal Appeals has indicated the process used by the State of proving up prior convictions closely resembles putting together a "'jigsaw puzzle.'" *Flowers*, 220 S.W.3d at 923 (quoting *Human v. State*, 749 S.W.2d 832, 835-36 (Tex. Crim. App. 1988) (op. on reh'g)). Ultimately, it is for the factfinder to consider the totality of the evidence admitted and determine (1) whether there was a previous conviction, and (2) whether the defendant was the person convicted. *Id.* at 923. If these two elements can be found beyond a reasonable doubt, then the pieces used to complete the "jigsaw puzzle" are necessarily legally sufficient to prove a prior conviction. *Id.* And as we have previously explained herein, the trier of fact weighs the information, and any alleged missing details in the evidence or inconsistencies

with other evidence goes to the weight, and not the authenticity, of the challenged exhibits. *Id.*; *see Robinson*, 739 S.W.2d at 802; *Hoover*, 2017 Tex. App. LEXIS 3668, at \*5; *Hasley*, 786 S.W.2d at 735. A trial court's ruling to admit evidence of prior convictions is well within its discretion when the admitted documents identify a person with the same name as appellant, the pen packets contain the same cause of actions as illustrated in the judgments, the information establishes a crime committed on the same date as is indicated in the judgments, and the same violations can be inferred from other record evidence. *See Elliott v. State*, 858 S.W.2d 478, 488 (Tex. Crim. App. 1993); *see also Tienda*, 358 S.W.3d at 638 ("Evidence may be authenticated in a number of ways, including by direct testimony from a witness with personal knowledge, by comparison with other authenticated evidence, or by circumstantial evidence.").

Exhibits 16 and 17 include a Declaration by the custodian of records for the Texas Department of Criminal Justice that attest that the pen packets are "true and correct copies of information provided on inmate Hanks, Clifton Todd [] kept by the TDCJ in the regular course of its business activity." In this case, Investigator Joe Nichols testified that the pen packets admitted as State's Exhibits 16 and 17 did not have readable fingerprints. Even so, Nichols also testified that he was able to tie the pen packet in Exhibit 17 to Hanks by reference to a review of Hanks's criminal history, his name, the date of the offenses, and the jurisdiction for the offenses. He

50

further testified that the Exhibit 16 pen packet pertained to a 2003 conviction for driving while intoxicated; the indictment for that offense included an enhancement paragraph listing a 1980 conviction for felony attempted burglary of a building; the judgment for the DWI offense reflects that Hanks pleaded "true" to the alleged enhancement for the 1980 burglary conviction; and State's Exhibit 17 includes the judgment and sentence for the 1980 burglary conviction. Both pen packets in Exhibits 16 and 17 include photographs of Hanks. Nichols testified that he fingerprinted Hanks, and he identified Hanks as the defendant. Hanks also testified during the punishment phase of trial that he went to prison in 2003 for driving while intoxicated, that he pleaded "true" to that charge, and that it was true he was previously convicted of attempted burglary of a building.

On this record, we cannot say the trial court abused its discretion in admitting the pen packets reflected by Exhibits 16 and 17. The trial court could have reasonably concluded that the State supplied facts sufficient to support a reasonable jury determination that the proffered evidence in State's Exhibit 16 was authentic. *See Fowler*, 544 S.W.3d at 849; *Elliott*, 858 S.W.2d at 488. Any complaints about inconsistencies or missing information in the pen packets would go to the weight of the evidence and not its admissibility. *Robinson*, 739 S.W.2d at 802; *Hoover*, 2017 Tex. App. LEXIS 3668, at *5; *Hasley*, 786 S.W.2d at 735. We overrule issues thirteen and fourteen.

## Motion for New Trial and Enhancement Allegations
### (Issues Three, Four, and Five)

In his third issue, Appellant argues that the trial court erred by overruling his Motion for New Trial. We review a trial court's denial of a motion for new trial under an abuse of discretion standard. *See Becerra v. State*, 685 S.W.3d 120, 127 (Tex. Crim. App. 2024). The Appellant argues the trial court erred by overruling Appellant's Motion for New Trial because under "Tex. R. App. P. 21.3 [] a new trial must be granted when the court has misdirected the jury about the law," and here "the jury was misdirected about the law as it relates to the available punishments and enhancements in this case because the jury charge at punishment did not properly follow the statute and require that the second enhancement paragraph be final subsequent to the first."

In his fourth issue, Appellant argues that the trial court erred by incorrectly charging the jury regarding the required findings of the enhancement paragraphs. According to Appellant, the jury charge asked the jury to find whether the two prior felony convictions that the State alleged were true, and such an instruction was incorrect because the jury was required to find that the second prior conviction was for an offense that occurred after the first prior felony conviction became final, citing *Bell v. State*, 635 S.W.3d 641 (Tex. Crim. App. 2021).

And in his fifth issue, Appellant argues that the evidence is insufficient to punish him as a habitual offender because of the alleged jury charge error as to proof of the sequence of prior convictions.

As explained earlier herein, for a claim of jury-charge error, we first determine whether error existed. *See Ngo*, 175 S.W.3d at 743. In this case, Appellant did not object to the jury charge instruction regarding the alleged enhancements until after trial, when he filed his Motion for New Trial. Therefore, under the second step outlined in *Ngo*, if we determine there was error we review the alleged jury-charge error to determine whether egregious harm resulted. *See id.* at 743-44.

We apply the *Jackson v. Virginia* standard to determine the sufficiency of evidence proving enhancement of punishment. *See Davy v. State*, 525 S.W.3d 745, 753 (Tex. App.—Amarillo 2017, pet. ref'd) (citing *Jackson*, 443 U.S. at 318-19); *Andrus v. State*, Nos. 05-08-00703-CR & 05-08-00704-CR, 2010 Tex. App. LEXIS 1665, at *19 (Tex. App.—Dallas Mar. 10, 2010, no pet.) (not designated for publication) (citing *Jackson*, 443 U.S. at 318)). Applying that standard, we consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential proof requirements beyond a reasonable doubt. *See Jackson*, 443 U.S. at 318-19; *Brooks*, 323 S.W.3d at 895. We measure the sufficiency of the evidence to support the enhancement by the elements of a

hypothetically correct jury charge for the enhancement, as it is defined by statute. *See Jackson*, 443 U.S. at 318-19; *Brooks*, 323 S.W.3d at 895. Here, the elements of proof required for enhancement under Penal Code section 12.42(d) are set forth in the statute.

Section 12.42(d) of the Penal Code provides, in relevant part:

> . . . if it is shown on the trial of a felony offense other than a state jail felony punishable under Section 12.35(a) that the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction the defendant shall be punished by imprisonment in the Texas Department of Criminal Justice for life, or for any term of not more than 99 years or less than 25 years. A previous conviction for a state jail felony punishable under Section 12.35(a) may not be used for enhancement purposes under this subsection.

Tex. Penal Code Ann. § 12.42(d). In other words, "'[t]he [chronological] sequence of events must be proved as follows: (1) the first conviction becomes final; (2) the offense leading to a later conviction is committed; (3) the later conviction becomes final; (4) the offense for which defendant presently stands accused is committed.'" *Jordan v. State*, 256 S.W.3d 286, 290-91 (Tex. Crim. App. 2008). (quoting *Tomlin v. State*, 722 S.W.2d 702, 705 (Tex. Crim. App. 1987)).

The indictment in this case specifically alleged that Hanks committed the offense of online solicitation of a minor "on or about May 19, 2021[.]" The jury charge for punishment in this case stated, in relevant part:

You have found the defendant, Clifton Todd Hanks, guilty of the offense of Online Solicitation of a Minor, as charged in the indictment. It is now necessary that you assess punishment in this cause.

. . . .

The State of Texas has alleged in Enhancement Paragraph A of the indictment that the defendant, Clifton Todd Hanks, was convicted of a felony, to wit: Driving While Intoxicated - 3rd on June 11, 2003 in the 183rd District Court of Harris County, Texas in Cause No. 934805 under the name of Clifton Todd Hanks and said conviction became final prior to the commission of the aforesaid offense.

To the allegations listed in Enhancement Paragraph A of the indictment, the defendant has pled "Not True."

If you believe from the evidence beyond a reasonable doubt that the allegations set out in Enhancement Paragraph A of the indictment are true, you will state in your verdict that you find "True" the allegations of Enhancement Paragraph A of the indictment; but unless you so believe, or if you have a reasonable doubt thereof, you will answer "Not True" to the allegations in Enhancement Paragraph A of the indictment.

. . . .

The State of Texas has also alleged in Enhancement Paragraph B of the indictment that the defendant, Clifton Todd Hanks, was convicted of a felony, to wit: Attempted Burglary of a Building on February 25, 1980 in the 262nd District Court of Harris County, Texas in Cause No. 309882 under the name of Clifton Todd Hanks and said conviction became final prior to the commission of the aforesaid offense.

To the allegations listed in Enhancement Paragraph B of the indictment, the defendant has pled "Not True."

If you believe from the evidence beyond a reasonable doubt that the allegations set out in Enhancement Paragraph B of the indictment are true, you will state in your verdict that you find "True" the allegations of Enhancement Paragraph B of the indictment; but unless you so believe, or if you have a reasonable doubt thereof, you will answer "Not True" to the allegations in Enhancement Paragraph B of the indictment.

. . . .

If you have answered "True" to all of the allegations in Enhancement Paragraphs A and B of the indictment, then you are instructed that the punishment for Online Solicitation of a Minor is

confinement in the Institutional Division of the Texas Department of Criminal Justice for Life or for any term of years not less than twenty-five (25) nor more than ninety-nine (99) years or Life.

The State argues that the jury charge in this case "aptly instructed the jury on the requisite finality and sequencing."

The jury charge stated that the jury had already found Hanks guilty of the offense of online solicitation as alleged in the indictment, and the indictment alleged that the offense of online solicitation was committed on or about May 19, 2021. The jury charge instructed the jury that the State alleged in Enhancement Paragraph A that Hanks was convicted of felony Driving While Intoxicated in 2003, and that conviction became final prior to the commission of the "aforesaid offense." Then the next paragraph of the jury charge instructed the jury that the State alleged in Enhancement Paragraph B that Hanks was convicted of felony Attempted Burglary of a Habitation in 1980, and that conviction became final prior to the commission of the "aforesaid offense." The "aforesaid offense" referenced in this second enhancement paragraph is the 2003 offense of felony Driving While Intoxicated. "Aforesaid" means "said or named before or above." *Aforesaid*, Merriam-Webster, https://www.merriam-webster.com/dictionary/aforesaid (last visited August 14, 2024). Appellant did not challenge the use of the word "aforesaid" at trial nor on appeal. Finally, in the charge the instruction provides, "[i]f you have answered 'True' to all of the allegations in Enhancement Paragraphs A and B of the indictment,

56

then you are instructed that the punishment for Online Solicitation of a Minor is confinement in the Institutional Division of the Texas Department of Criminal Justice for Life or for any term of years not less than twenty-five (25) nor more than ninety-nine (99) years or Life." We conclude that the jury charge on the enhancement allegations adequately contained a requirement that the jury must decide whether the offense alleged in Enhancement Paragraph B (the 1980 offense) became final before the offense alleged in the previous Enhancement Paragraph A (the 2003 offense), and we cannot say the charge erroneously failed to provide a sequential element consistent with article 12.42(d) of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 12.42(d).

With respect to the sufficiency challenge, the evidence in the record shows that the sentence for the 1980 conviction was "not less than 2 years and not more than 3 years" of confinement, and the judgment for the 2003 DWI shows that Hanks was sentenced to 12 years of confinement. Imposition of these sentences establishes the finality of the convictions. *See Ex parte Pue*, 552 S.W.3d 226, 230 (Tex. Crim. App. 2018) (citing *Martinez v. State*, 531 S.W.2d 343, 345 (Tex. Crim. App. 1976); *Snodgrass v. State*, 150 S.W. 162, 172 (Tex. Crim. App. 1912)).

At the time of the punishment hearing, the jury had already found Hanks guilty as charged in the indictment of online solicitation of a minor, committed on or about May 19, 2021. The pen packets admitted into evidence establish that Hanks's

conviction for Attempted Burglary became final in February of 1980, and the commission of the felony Driving While Intoxicated occurred twenty-three years later in 2003. *See Bell*, 635 S.W.3d at 647. Hanks testified at trial that the last time he went to prison was in 2003 for driving while intoxicated, and he agreed that he had committed crimes "on and off" from 1977 through 2021. He also admitted that the enhancement allegations in this case were true, even though he had pleaded "not true." And as we discussed above, in the pen packet for the 2003 offense, the evidence shows Hanks pleaded true to the enhancement allegation that the 1980 prior offense of attempted burglary became final prior to the 2003 offense.

Considering the entirety of the charge and measuring the evidence presented to the jury in this case against a hypothetically correct jury charge, a rational juror, accurately instructed on the law regarding finality under section 12.42(d), would reasonably conclude from the evidence, that Appellant's conviction for burglary was final in 1980, that his conviction for that crime became final before he was convicted of driving while intoxicated in 2003, and that his conviction for the DWI became final before the current offense for online solicitation of a minor. *See Jordan*, 256 S.W.3d at 290-91; *Davy*, 525 S.W.3d at 753.

Although Appellant has challenged the admission of the pen packets, he admitted to the jury that the enhancement allegations were true, despite having pleaded "not true." Accordingly, reviewing the evidence in the light most favorable

58

to the verdict, we conclude that the evidence is sufficient to support the jury's finding of "true" to both of the alleged enhancements. *See Jackson*, 443 U.S. at 319; *Davy*, 525 S.W.3d at 753. We also conclude that the trial court did not abuse its discretion by denying Appellant's Motion for New Trial. *See Becerra*, 685 S.W.3d at 127.

But even assuming there was error in the enhancement part of the charge, the error would still be subject to a harm analysis. *See Bell*, 635 S.W.3d at 645; *see also Ngo*, 175 S.W.3d at 743-44. Here, because Appellant did not object to the charge during the trial Appellant must show egregious harm. *See Bell*, 635 S.W.3d at 645. To assess whether a charge error caused a defendant egregious harm, appellate courts consider: "(1) the entirety of the jury charge, (2) the state of the evidence, including the contested issues and weight of probative evidence, (3) the arguments of counsel, and (4) any other relevant information revealed by the trial record as a whole." *Almanza,* 686 S.W.2d at 171.

The entire jury charge given to the jury during the punishment phase included a requirement that the jury must find "all" the allegations in the Enhancement Paragraphs A and B true and then the punishment would range between 25 years to life. The defense attorney never objected to the instruction nor did the defense contest the finality or sequencing of the 1980 or 2003 offenses, and nothing in the record before us shows there were any fact issues raised on finality or sequencing of the alleged enhancement offenses. *See Buchanan v. State*, 453 S.W.2d 479, 484

59

(Tex. Crim. App. 1970). According to the evidence in the record, Appellant's 1980 conviction as alleged in Enhancement Paragraph B became final before he committed the "aforesaid offense," his second felony offense as alleged in Enhancement Paragraph A. During direct examination by defense counsel, the Appellant testified that since 1977, he has been arrested and convicted many times in his life, and that he pleaded guilty each time. During cross-examination, the Appellant agreed that he went to prison in 2003 for a felony driving while intoxicated (DWI) conviction, and that he admitted that he pleaded "true" to the enhancement paragraph in his DWI case, and that his 1980 conviction for attempted burglary had become final before he was convicted of the DWI. He also admitted in this case that the enhancement paragraphs as alleged in his indictment were "in fact true[.]" Then, during closing arguments, trial counsel emphasized that the appellant "got up there . . . and admitted [the enhancement paragraphs are] true." And then defense counsel told the jury to "[f]ind Enhancements A and B true[]" and asked the jury to assess his punishment at the minimum of twenty-five years imprisonment. Considering the charge as a whole, the state of the evidence presented to the jury, the arguments of counsel, and the record as a whole, we conclude that the Appellant failed to establish he suffered egregious harm from the alleged charge error. *See Almanza*, 686 S.W.3d at 171.

We overrule Appellant's third, fourth, and fifth issues.

Having overruled all of Appellant's issues, we affirm the trial court's judgment of conviction.

AFFIRMED.

LEANNE JOHNSON
Justice

Submitted on August 5, 2024
Opinion Delivered September 11, 2024
Do Not Publish

Before Golemon, C.J., Johnson and Chambers, JJ.